[Civ. No. 24979.   Second Dist., Div. Three.   Aug. 11, 1961.]

JOSEPH V. PONTI et al., Respondents, v. DAVID FARRELL et al., Appellants.

Morgan Cuthbertson for Appellants.

Mason & Howard and C. Loy Mason for Respondents.

VALLÉE, J.—Plaintiffs Joseph V. Ponti and F. L. Freeman brought this action against defendants David Farrell and Los Angeles Trust Deed and Mortgage Exchange, called Exchange. The complaint was in two counts. Count I was for damages for violation of the Corporate Securities Act. The court found against plaintiffs on that issue. Count II alleged " [w]ithin four tyears last past and prior to the commencement of the above entitled action the defendants became indebted to the plaintiffs, and each of them, upon a written instrument in the sum of $5,000.00 for money had and received by the defendants for the use of plaintiffs''; and although demand had been made, no part thereof had been paid. The court found for plaintiffs on count II. Since plaintiffs have not appealed, we are not concerned with count I.

The pertinent findings with respect to count II are these: During March 1956 Farrell, acting on behalf of himself and for and on behalf of Exchange, requested each plaintiff to invest $5,000 in a uranium venture over which Farrell and Exchange had control; both plaintiffs had dealings with Farrell and Exchange prior to March 1956 and had developed confidence in each of said defendants' integrity and business acumen; Farrell, for himself and on behalf of Exchange, falsely and fraudulently and with intent to deceive and defraud plaintiffs and each of them, represented that he was personally investing $5,000 cash for a percentage in said uranium mining venture; further Farrell, for himself and for Exchange, falsely and fraudulently and with intent to deceive and defraud plaintiffs, and each of them, caused instruments to be drawn showing that he had personally invested $1,250 and that his associate vice-president of Exchange, Arthur Preece, had invested $1,250; Farrell later confirmed said false representations by his written statement distributed to each of plaintiffs, all with intent of inducing said plaintiffs, and each of them, to invest $5,000 each in the uranium venture; Farrell on behalf of himself and Exchange, falsely and fraudulently and with intent to deceive and defraud plaintiffs, and each of them, represented the general partner, William L. McAllister, owned a power shovel of the value of $10,000 and that it would be transferred to the limited partnership being formed concurrently with the investing of plaintiffs' money in the uranium mining venture; further Farrell, on behalf of himself and Exchange, falsely and fraudulently and with intent to deceive and defraud plaintiffs, and each of them, represented that William L. McAllister, the general partner in the limited partnership being formed, was an experienced mining and oil man, had a lot of experience in handling ''heavy equipment,'' and was a responsible and honest person, all with the intent of inducing plaintiffs, and each of them, to invest $5,000 in the uranium venture.

The court further found: Defendant Farrell was president and agent of Exchange; the representations were false; they were known by defendants to be false; Farrell did not invest any cash in the venture; Preece did not invest any cash in the venture; McAllister did not own a power shovel; defendants did not cause a power shovel to be transferred to the limited partnership; McAllister was not an experienced mining and oil man, had no experience in handling heavy equipment, and

was not an honest and responsible person; plaintiffs believed and relied on the representations and were thereby induced to and each of them did, about March 26, 1956, give $5,000 to defendants; Exchange benefited from the receipt of the money and retained part of it in the form of commissions, fees, and expenses; neither plaintiff discovered the falsity of the representations until after December 20, 1956.

The court also found: About April 6, 1956, defendants caused a limited partnership to be formed; each plaintiff and Farrell were parties to the agreement; plaintiffs' claims are not barred by the statute of limitations.

Judgment was for each plaintiff for $5,000 with interest from March 26, 1956. Defendants appeal.

The first assignment of error is that count II is not a common count because it says "defendants became indebted to the plaintiffs, and each of them, *upon a written instrument* in the sum of $5,000.00 for money had and received" (emphasis added), and therefore evidence of fraud was inadmissible. The point is untenable. It is answered by *Smith* v. *Randall*, 51 Cal.App.2d 195 [124 P.2d 334]. The complaint in that case alleged (p. 196) : "That within 4 years last past, at and within the County of Los Angeles, State of California, under a written agreement, the defendant received the sum of Three Thousand ($3,000) Dollars, for the use and benefit of plaintiff. That demand has been made upon defendant for payment thereof but the same has not been paid nor any part thereof." The court held (p. 197) :

"The complaint is in the form of a common count for money had and received."

The issue of fraud and misrepresentation is sufficiently raised by pleading a common count for money had and received. A common count may be used to recover money obtained by false and fraudulent representations. (*Voss* v. *Friedgen*, 141 Cal.App.2d 135, 136 [296 P.2d 424].) The action is one *in assumpsit* on an implied contract to repay the money received by the defendants. The rule is elementary that a party may elect to sue for damages resulting from the fraud, or to waive the tort and sue for the money paid. (*Firpo* v. *Pacific Mut. Life Ins. Co.*, 80 Cal.App. 122, 124-125 [251 P. 657] ; 2 Chadbourn, Grossman and Van Alstyne, California Pleading, § 1031, p. 201. Also see *Jensen* v. *Harry H. Culver & Co.*, 127 Cal.App.Supp. 783 [15 P.2d 907].)

The second assignment of error is that the findings are not supported by the evidence. There was evidence of these facts: Defendant Farrell was a major stockholder and owner of Exchange. In March 1956 Farrell asked each plaintiff to invest $5,000 in a uranium venture. He showed them some samples of ore, several assay reports and purported reports of the Atomic Energy Commission, and told them the ore could be easily mined and there was a big demand for it at that time. He told plaintiff Ponti "he had a hot cinch deal." Farrell told them a limited partnership would be formed, that it would take $30,000 to put the deal over, they had an option and there were six of them going into it. He told plaintiffs he and Preece, a vice-president of Exchange, were going "to put in $5,000 each, to be part of the six." He told them $10,000 was to be used for the purchase of an option on the lease and $20,000 for operating expenses.

Farrell told Freeman he had a friend by the name of McAllister, an experienced mining engineer, who was to be the general partner. He told plaintiffs McAllister owned a steam shovel in Long Beach worth $10,000 and that McAllister had agreed to put that into the venture to guarantee good faith in carrying it out. Farrell said he was going to handle the money and see that it was expended properly, that the option was about to expire and that they had to have the money within the next few days.

Plaintiffs testified they believed the representations. Ponti gave Farrell a check for $4,500 and one for $500, both payable to Preece. Freeman gave Farrell a check for $5,000 payable to Preece. Preece endorsed the checks to Exchange.

Farrell caused a certificate of limited partnership to be drawn. McAllister was shown as the general partner; plaintiffs Ponti and Freeman, Farrell, Preece, and nine others were shown as limited partners. It showed that Farrell and Preece had each contributed $1,250 to the partnership.

The partnership agreement showed contributions of $30,000 on an original basis of a one-sixth share to each limited partner for each $5,000 contributed. One of the one-sixth shares went to Exchange for purported services in supervising the organization or as commission. Exchange purportedly paid Farrell and Preece each $1,250 for organizational purposes and sold the balance of its interest to five individuals at $500 each. Farrell and Preece endorsed the checks from Exchange back to Exchange so the books would indicate a cash contribu-

tion by Farrell and Preece of $1,250 each. Farrell's testimony as to this transaction is quoted in the footnote.[1]

Farrell represented to plaintiffs he was investing $5,000 of his own funds. He did not at any time put any cash into the partnership. Instead he put himself in a position of making a cash profit on the transaction, even though the partnership failed completely, since he was a major stockholder and owner of Exchange. The fact that he had not invested any cash was unknown to plaintiffs until about December 20, 1956. Farrell handled the money and was the one who took the assignment of the option from McAllister. He made the contacts with Hefter, the purported owner of the mining claims. He made the claimed arrangements with McAllister and told plaintiffs McAllister was putting in a power shovel worth $10,000. McAllister did not have a power shovel. McAllister was not an experienced mining and oil man and had no experience with heavy equipment. He went to state prison for his part in the fraudulent promotion. All the partnership had was "a hole in the ground surrounded by country rock and

---

[1] "Q. Now, then, going to the interest that you finally received, that was for services rendered in setting up the deal? A. In checking it out, in administratively taking the problem of seeing to it that the title was perfected, for drawing the papers, handling the escrow, so to speak, in connection with the transaction, to see to it that the limited partnership did in fact receive the mining claims, and writing out the miscellaneous reports that we made in connection with it, yes. Q. The fact that you have answered 'Yes' at the end, doesn't change your answer that your interest in the limited partnership was for services that you had rendered the limited partnership, is that right? A. Yes. THE COURT: Actually, neither you nor Mr. Preece, outside of that bookkeeping entry, invested anything in this, is that right? THE WITNESS: No. That is correct, sir."

"THE COURT: . . . That is the purpose of the letter? You have testified that neither you nor Mr. Preece had any money. THE WITNESS: That would depend on the definition as to what constituted our investment. THE COURT: You each put $1250.00 in and you each drew it out, and according to Exhibit No. 8, you drew it out, you each drew it out, on April 6 of 1956, is that right? THE WITNESS: Yes, I could explain how the mechanics of it operated, if you'd like. THE COURT: I understand how it operated, but you invested, according to the statement, $1250.00 on April 1st, you and Mr. Preece, each? THE WITNESS: Right. THE COURT: This shows under 'Detail of receipts:'? THE WITNESS: I don't believe the money was—— THE COURT: And then on or about April 6, you were repaid, you and Mr. Preece were repaid that $1250.00, so that after April 6, neither you nor Mr. Preece had any money in it, is that right? THE WITNESS: Yes. What actually happened was that the check of the company was drawn to David Farrell, and another check to Arthur Preece, and we endorsed it back to the company to make this particular investment here that is shown here. THE COURT: But the net result was that you had none of your own money, nor did Mr. Preece? THE WITNESS: Yes, sir, that is true. That's the net result."

sand." In a letter to the limited partners dated September 18, 1956, Farrell stated, "In fact, Mr. Preece and I each put in $1,250 for an interest because we believed so firmly in it."[2]

Defendant Farrell's representation that he was going to invest his own funds was a material fact which induced plaintiffs to invest. The evidence was adequate to show this was a false representation. (*Mary Pickford Co.* v. *Bayly Bros., Inc.,* 12 Cal.2d 501, 510 [86 P.2d 102].)

The evidence supports the finding that Farrell, for himself and on behalf of Exchange, falsely and fraudulently and with intent to deceive and defraud plaintiffs represented he was personally investing $5,000 cash in the venture. Plaintiffs testified they relied on defendants' representations and were induced thereby to invest. Each plaintiff contributed $5,000 to the venture. Farrell did not invest. All elements necessary to prove fraud were established. (*Hobart* v. *Hobart Estate Co.,* 26 Cal.2d 412, 422 [159 P.2d 958].)

▮ Defendants' assertion that fraud was not an issue in the case is not well taken. The case was tried as though fraud were an issue. (See *Lein* v. *Parkin,* 49 Cal.2d 397, 400 [318 P.2d 1].) Plaintiffs' evidence proved fraud and defendants' evidence was an effort to negative it. Further, the pretrial order is not in the record. In its absence, we must assume fraud was there stated to be an issue.

▮ The third assignment of error is that the cause of action is barred by the statute of limitations. The point is without merit. The representations were made in March 1956. Plaintiff Freeman contributed his $5,000 on March 28, 1956. Plaintiff Ponti contributed $4,500 on March 29, 1956, and $500 on April 6, 1956. The certificate of limited partnership was dated March 26, 1956. The fraud was discovered after December 20, 1956. This action was filed December 16, 1958.

In *MacDonald* v. *Reich & Lievre, Inc.,* 100 Cal.App. 736 [281 P. 106], the complaint was in the form of a common count of indebtedness for money had and received. The plaintiff proved fraud. The fraud occurred in 1922. It was discovered in January 1927. The action was commenced June 22, 1927. Judgment was for the plaintiff. On review it was

---

[2]For the activities of defendant Los Angeles Trust Deed and Mortgage Exchange, see *Los Angeles Trust Deed & Mortgage Exchange* v. *Securities & Exchange Com.* (9 Cir. 1960), 285 F.2d 162, and *Securities & Exchange Com.* v. *Los Angeles Trust Deed & Mortgage Exchange,* 186 F.Supp. 830.

contended, as it is here, that the action was barred by the two-year statute of limitations. The court held (p. 740):

"It is not to be doubted, in fact appellant concedes, that the common count may be used in an action of this kind. . . .

" [P. 741.] No doubt the form of the action is one upon an implied contract, but the criterion for determining the particular statute of limitations applicable, is not the form of the action, but the substance of it and the nature of the right, the violation of which creates the right of action. This is particularly true in those jurisdictions where common-law forms of action have been abolished. . . .

"The substance and nature of the right which gave respondent a cause of action in this case was not contract. Appellant never in fact and reality agreed to pay back the money received for the stock. The contract implied by law is merely a fiction of law and does not, therefore, go to the substance of this cause of action. A fiction of law is introduced to promote justice, not to work a wrong contrary to the real truth and substance of the thing. . . .

" [P. 742.] We conclude, therefore, that the statute of limitations prescribed for this cause of action is that contained in Code of Civil Procedure, section 338, subdivision 4, and that under the terms of that section the action was not barred at the time it was commenced." (See also *Parmely* v. *Boone*, 35 Cal.App.2d 517, 519-520 [96 P.2d 164].)

At bar, defendants pleaded the two-year statute of limitations. (Code Civ. Proc., § 339.) The applicable statute is section 338, subdivision 4 (three years). Plaintiffs' right of action did not accrue until they discovered the fraud. (*Mary Pickford Co.* v. *Bayly Bros., Inc.*, 12 Cal.2d 501, 525-526 [86 P.2d 102].) Assuming plaintiffs had notice in April 1956 that Farrell had not invested $5,000, as defendants argue, the action was commenced within the statutory period. The finding that plaintiffs' claims are not barred by section 339 of the Code of Civil Procedure or otherwise is immune from attack.

There are no other assignments of error.

Affirmed.

Shinn, P. J., and Ford, J., concurred.

A petition for a rehearing was denied August 29, 1961, and appellants' petition for a hearing by the Supreme Court was denied October 4, 1961.