[Civ. No. 20846. First Dist., Div. One. May 25, 1964.]

ALVIN C. AUER et al., Plaintiffs and Appellants, v. LOU FRANK et al., Defendants and Respondents.

Harold D. Mefford for Plaintiffs and Appellants.

Sabraw & Avera and Fred E. Avera for Defendants and Respondents.

MOLINARI, J.—This is an appeal by plaintiff general contractor from a judgment, after a court trial, in favor of individual defendants who were sought to be held responsible for obligations incurred by the corporate defendant on a contract for the construction of certain dwelling houses in Alameda County.

### THE FACTS

Preliminarily, we set out the following background facts: Plaintiffs, Alvin C. Auer and H. Dean Loomis, are copartners doing business as Century Homes, a licensed general contractor.[1] Defendant Castro Valley Sales & Investment Company[2] (not a party to this appeal), is a California corporation whose president and secretary, respectively, are defendants Lou Frank and Carl Sumner.[3] In March 1960 plaintiff and defendents, acting for the corporation, entered into an oral agreement whereby plaintiff agreed to provide labor, services and materials for the completion of five dwelling houses

[1]Hereinafter referred to as "plaintiff."

[2]Hereinafter referred to as "the corporation."

[3]Hereinafter referred to as "defendants."

owned by the corporation for a sum equal to the cost of said labor, services and materials plus the further sum of 10 percent of such cost. Plaintiff knew at the time of making said verbal agreement that Castro Valley Sales & Investment Company was in fact a corporation, and that defendants were officers of the corporation. The evidence discloses that plaintiff was informed that in making the verbal agreement defendants were acting in a representative capacity and on behalf of the corporation.

During the period from March to July of 1960 plaintiff performed services and provided materials to the corporation in connection with the construction of said houses. In December 1960 an action in two counts entitled "Complaint for Money," was filed by plaintiff against the corporation and defendants. An answer was filed by defendants, but none was filed on behalf of the corporation. On February 3, 1961, the corporation filed a voluntary petition in bankruptcy and was adjudicated a bankrupt by the United States District Court. Prior to trial, the default of the corporation was entered, and the cause thereafter proceeded to trial against defendants. After the submission of the cause, and based upon findings of fact and conclusions of law, the pertinent provisions of which we shall hereinafter set out, the trial court ordered that plaintiff have judgment against the corporation in the sum of $6,779.80 but that it take nothing against defendants.

### PLEADINGS AND PROCEEDINGS PRIOR TO TRIAL

After the usual introductory and identifying statements the first count of the complaint alleged in pertinent part as follows: "IV. That prior to July 1, 1960, and within one year last past, in connection with the completion of the construction of eight dwelling houses . . . , plaintiffs at the request of the defendants, and each of them, performed work, labor and services in the completion of construction of said dwelling houses, as general contractors, and furnished materials in and about said work; that plaintiffs performed said work, labor and services and furnished said materials to said defendants, in the County of Alameda, State of California. V. That at the time said work, labor and materials were ordered of the plaintiffs by the defendants, the defendants, and each of them, promised to pay to the plaintiffs an amount equal to the cost of all such labor, services and materials used in the completion of the construction of said dwelling houses, together with the further sum of 10% of said cost, to be paid when said work should be completed; that said work of con-

struction was completed on or about July 1, 1960; that there became due and payable to the plaintiffs from the defendants for said labor, materials and services the amount of $18,111.86. VI. That defendants have not paid the same nor any part thereof except the amount of $10,365.20, and there is now due, owing and unpaid the principal sum of $7,746.66, together with interest at the legal rate of 7% from July 1, 1960." In the second count plaintiff incorporated the preliminary statements of the first count and alleged as follows: "II. That on December 1, 1960 an account was stated between the plaintiffs and defendants Lou Frank and Carl Sumner, and each of them, wherein it was agreed and determined that the defendants were indebted to the plaintiffs in the amount of $6,779.80. III. That although demand has been made for the payment thereof defendants have failed and continue to fail to pay said amount and there is now due and owing and unpaid the amount of $6,779.80 from the defendants to the plaintiffs...."

In their answer defendants denied generally and specifically the allegations of the complaint insofar as they purported to fasten liability upon them individually, and averred therein that any work, labor and services performed by plaintiff, and any materials furnished by it, were provided to the corporation, and that any sum that may be due to plaintiff in the premises is due from the corporation.

The pretrial conference order adopts the pretrial statement of defendants as a part thereof, and provides that it is stipulated by said defendants "that the work was performed by plaintiffs." The pretrial order is thus left in a posture where the respective contentions of the parties are stated but no specific issues are delineated. The essence of defendants' pretrial statement is that plaintiff contends that defendants are indebted to plaintiff as alleged in its complaint and that defendants deny that they are indebted to plaintiff as in said complaint alleged.

## PROCEEDINGS AT TRIAL

In his opening statement counsel for plaintiff stated that he proposed to produce evidence showing that the corporation was the *alter ego* of defendants. Defendants' counsel objected that the issue of *alter ego* was not before the court because it was neither pleaded in the complaint nor designated as an issue in the pretrial order. Counsel for plaintiff conceded that at the time the complaint was filed no issue was intended to be

raised involving *alter ego,* and that it was only after the taking of depositions that the issue presented itself as a basis of liability on the part of defendants. He urged, however, that the "general nature" of the pleadings permitted the introduction of evidence on the theory of *alter ego.* No motion was made by plaintiff to amend the complaint or the pretrial order so as to specifically raise this issue. The trial court reserved its ruling and proceeded to hear the testimony in the case. On the third day of the trial the court ruled that it would be proper to admit evidence bearing on the issue of *alter ego.* Evidence was thereupon adduced on this issue consisting, generally, of the failure to obtain authority to issue stock and tending to show that the corporation was inadequately capitalized. It should be here pointed out that at the conclusion of the case plaintiff did not seek to amend its complaint to conform to proof on the *alter ego* theory, although it did seek to amend to conform to proofs in other respects.

Upon the submission of the cause the trial court made its findings of fact and conclusions of law. Essentially, the trial court found: that plaintiff entered into a verbal agreement with the corporation to provide the labor, services and materials as alleged in plaintiff's complaint, and for the compensation therein stated, at the instance and request of said corporation; that there is a balance due and owing from said corporation to plaintiff for said services and materials in the sum of $6,779.80; that said balance is due and owing from said corporation "and not from defendants Lou Frank and/or Carl Sumner, as individuals"; that "said verbal contract was not made between the plaintiffs and defendants Lou Frank and Carl Sumner as individuals"; and "[t]hat plaintiffs knew and were informed, at the time that said verbal agreement was made and entered into, as aforesaid, that Castro Valley Sales & Investment Company was in fact a corporation, and that defendants Lou Frank and Carl Sumner were officers of said corporation; and that in making and entering into said verbal agreement, said individual defendants were acting in a representative capacity and on behalf of said defendant corporation"; that the services performed and materials furnished were at the instance and request of the corporation, and "that said services and materials were not provided for or at the instance or request of defendants Lou Frank and/or Carl Sumner, as individuals"; and that no account was stated as between plaintiff and defend-

ants at any time, wherein it was agreed that said defendants were indebted to plaintiff. Plaintiff does not challenge this last-mentioned finding of fact, nor does it raise any objection pertaining to the account stated on this appeal.

### CONTENTIONS OF THE PARTIES

Plaintiff contends that the trial court failed to find on the material issue of *alter ego*. Defendants urge that the pleadings in this case raise no issue of fact involving the *alter ego* doctrine, and that therefore no findings of fact are necessary. It is argued by defendants, moreover, that if it be held that such issue was before the court then the findings of fact made necessarily imply a finding on that issue in favor of defendants.

### WAS THE APPLICATION OF THE ALTER EGO DOCTRINE AN ISSUE IN THE CASE?

*Yes.* In their arguments before this court defendants have placed themselves in the position where they "wish to eat their cake and have it too." They contend that the issue of whether there was an *alter ego* relationship was not before the trial court because it was not pleaded, yet they do not claim error on the part of the trial court in admitting evidence tending to establish such a relationship. In this latter regard they assert that implicit in the trial court's findings is a finding based upon the evidence adduced that an *alter ego* relationship did not exist.

There appears to be some authority to the effect that the *alter ego* doctrine must be pleaded in the complaint. (*Judelson* v. *American Metal Bearing Co.*, 89 Cal.App.2d 256, 263 [200 P.2d 836]; *Meadows* v. *Emett & Chandler*, 99 Cal.App. 2d 496, 499 [222 P.2d 145]; *Oregon Cedar etc. Co.* v. *Ramos & Kohler*, 148 Cal.App.2d 679, 683 [307 P.2d 447].) There is also authority, however, that where a defendant is charged with liability his denial thereof is sufficient to establish such liability upon the principle of *alter ego* even though the complaint is devoid of such an allegation. (*Pan Pacific Sash & Door Co.* v. *Greendale Park, Inc.*, 166 Cal.App.2d 652, 655 [333 P.2d 802]; *Gordon* v. *Aztec Brewing Co.*, 33 Cal.2d 514, 523 [203 P.2d 522]; *Marr* v. *Postal Union Life Ins. Co.*, 40 Cal.App.2d 673, 680 [105 P.2d 649].) This is the situation presented by the circumstances of the instant case. Not only do defendants deny liability but they affirmatively assert in their brief that the liability sought to be established by plaintiff is not that of defendants, as individuals, but that

of the corporation. It should be here noted that both of the counts in the instant complaint are framed in the form of common counts. In *Pan Pacific* the action was upon a common count for goods, wares and merchandise sold and delivered. There the circumstances were similar to those in the present case. The defendant's counsel, following the opening statement of counsel for the plaintiff, stated that he would object to any evidence tending to establish that each of the defendants was the *alter ego* of the other, and thereafter objected to all evidence tending to establish this fact. All of these objections were overruled and such evidence was received. It is convenient to note here, by way of analogy, that under the common count pleading the courts have permitted evidence of fraud (*Minor* v. *Baldridge,* 123 Cal. 187, 190-191 [55 P. 783]; *Fallon* v. *Sockolov,* 55 Cal.App. 33, 35-36 [202 P. 909]; *Firpo* v. *Pacific Mut. Life Ins. Co.,* 80 Cal.App. 122, 124-125 [251 P. 657]; *Maxwell* v. *Jimeno,* 89 Cal.App. 612, 613-615 [265 P. 885]; *Strutzel* v. *Williams,* 109 Cal.App.2d 512, 515 [240 P.2d 988]; *Ponti* v. *Farrell,* 194 Cal.App.2d 676, 679 [15 Cal.Rptr. 500]), unjust enrichment (*Townsend Pierson, Inc.* v. *Holly-Coleman Co.,* 178 Cal.App.2d 373, 378 [2 Cal.Rptr. 812]), and secret profits (*Adams* v. *Harrison,* 34 Cal. App.2d 288, 293-294 [93 P.2d 237]; see also *J. Breuner Co.* v. *Western Union Tel. Co.,* 108 Cal.App. 243, 248-249 [291 P. 445], wherein it is stated that a complaint in the common count for money had and received "is all-embracing" and is sustained by facts indicating that the defendant owes money to the plaintiff).

Assuming, *arguendo,* that the issue of the application of the *alter ego* doctrine was not an issue tendered by the pleadings or the pretrial order in the instant case, and that defendants effectively preserved their objection to the admissibility of evidence thereof in the court below, the error in admitting such evidence has been waived by defendants' failure to appeal. *American Enterprise, Inc.* v. *Van Winkle,* 39 Cal.2d 210, 221 [246 P.2d 935]; *State of California* v. *Day,* 76 Cal.App.2d 536, 551 [173 P.2d 399]; *Rapp* v. *Southern Service Co.,* 116 Cal.App. 699, 708 [4 P.2d 195]; *Worth* v. *Emerson,* 3 Cal.App. 158, 161 [85 P. 664]; see *Sullivan* v. *Schellinger,* 170 Cal.App.2d 111, 114 [338 P.2d 462].) The failure to appeal indicates acquiescence in the judgment. (*American Enterprise, Inc.* v. *Van Winkle, supra,* at p. 221.) As stated in *American Enterprise,* "there devolves upon a litigant the duty to appeal from a judgment with which he has serious dissatisfaction." (P. 221.) ▮ It is the general

rule that a respondent in whose favor a judgment is rendered is interested only in maintaining the judgment, and he cannot on an appeal of the opposite party ask a court of review to consider any errors against him, even though the errors of which the respondent complains were objected to by him in the trial court and are argued or discussed in the respondent's brief. (*Rapp* v. *Southern Service Co., supra,* at p. 708.) The exception to this rule is that provided by the 1957 amendment to Code of Civil Procedure section 956 which provides that the respondent, or party in whose favor the judgment was given, may, without appealing from the judgment, request the court to and it may review the matters reviewable on appeal from the judgment *for the purpose of determining whether or not the appellant was prejudiced* by the error or errors upon which he relies for reversal or modification of the judgment from which the appeal is taken. (See *Central Manufacturing District, Inc.* v. *Board of Supervisors,* 176 Cal.App.2d 850, 857 [1 Cal.Rptr. 733]; *Mott* v. *Horstmann,* 36 Cal.2d 388, 393 [224 P.2d 11].) ▮ In the case at bench appellant-plaintiff is not claiming error in the admissibility of evidence as to the application of *alter ego* doctrine, but, to the contrary, asserts that its admission was proper. For that matter, neither do defendants complain that such evidence was improperly admitted, except as it appears that they do so indirectly through the assertion that the *alter ego* issue was not before the trial court. Suffice it to say, under the circumstances here present, the instant case finds itself in the same posture as the cases which come under the time-honored rule that where the parties and the court proceed throughout the trial upon the theory that a certain issue is presented for adjudication, the doctrine of estoppel precludes either party from thereafter asserting that no such issue was in controversy, even though it was not actually raised by the pleadings. (*Miller* v. *Peters,* 37 Cal.2d 89, 93 [230 P.2d 803]; *People* v. *Nahabedian,* 171 Cal.App.2d 302, 306 [340 P.2d 1053]; *People* ex rel. *Dept. of Public Works* v. *Lagiss,* 223 Cal.App.2d 23, 37 [35 Cal.Rptr. 554].)

### DID THE TRIAL COURT MAKE A FINDING ON THE ALTER EGO DOCTRINE?

▮ *Yes.* Section 632 of the Code of Civil Procedure[4] requires that findings ''shall fairly disclose the court's deter-

---

[4] All statutory references hereinafter, unless otherwise indicated, are to the Code of Civil Procedure.

mination of all issues of fact in the case.'' Accordingly, it is essential that findings be made on every material issue raised by the pleadings, including issues raised upon affirmative defenses in the answer. A failure to do so constitutes reversible error. (*De Burgh* v. *De Burgh,* 39 Cal.2d 858, 873 [250 P.2d 598]; *Mason* v. *Ennes,* 172 Cal.App.2d 99, 104 [342 P.2d 79]; *Bertone* v. *City & County of San Francisco,* 111 Cal.App. 2d 579, 586 [245 P.2d 29].) ▉ Unless there is a request for special findings as provided in section 634,[5] a judgment will not be set aside on appeal because of a failure to make an express finding upon an issue if a finding thereon, consistent with the judgment, results by necessary implication from the express findings which are made. (*Ruppert* v. *Jackson,* 212 Cal.App.2d 678, 682-683 [28 Cal.Rptr. 467]; *Haldeman* v. *Haldeman,* 202 Cal.App.2d 498, 506-507 [21 Cal.Rptr. 75]; *Carmichael* v. *Carmichael,* 216 Cal.App.2d 674, 679 [31 Cal.Rptr. 514]; *Richter* v. *Walker,* 36 Cal.2d 634, 640 [226 P.2d 593].) ▉ As stated in *Calloway* v. *Downie,* 195 Cal.App.2d 348, 353 [15 Cal.Rptr. 747]: ''The prohibition of section 634 of the Code of Civil Procedure against inferred findings applies if the party attacking the judgment requested a specific finding on the issue in question.''

In the case at bench plaintiff filed no objections, counterfindings or requests for special findings when the proposed findings were served upon it.[6] It contends, however, that its motion to set aside the judgment under section 663 was sufficient to constitute such a request. Section 634 provides that a request for a specific finding may be made in conjunction with a motion under section 663. ▉ The pertinent portion of the subject motion reads as follows: ''Said motion will be based upon the grounds that the conclusions of law were not

---

[5]Code Civ. Proc., § 634, at the time the findings were made, provided in pertinent part as follows: ''If upon appeal or upon a motion under section 657 or 663 of this code it appears that the court has not made findings as to all facts necessary to support the judgment, or that the findings are ambiguous or conflicting upon a material issue of fact, the court before which such appeal or motion is pending shall not infer that the trial court found in favor of the prevailing party on such issue if it appears that the party attacking the judgment made a written request for a specific finding on such issue either prior to the entry of judgment or in conjunction with a motion under section 663 of this code.''

[6]Code Civ. Proc., § 634, provided in part as follows: ''Within five days after such service any other party may serve and file objections, counter-findings and requests for special findings.''

consistent with the findings of fact in that the conclusions of law purport to dispose of all the issues raised at the trial whereas no finding was made on the substantial issue, raised and presented at the trial in detail, on the question whether the individual defendants were and are, responsible to the plaintiffs with the corporate defendant under the *alter ego* theory.'' This statement is not a request for a special finding. At best it is an objection that the trial court made no finding at all on the *alter ego* question. The essence of the motion is that the conclusion of law that ''plaintiffs should take nothing from defendants Lou Frank and Carl Sumner,'' purporting to dispose of all of the issues raised at the trial, includes the *alter ego* theory, was inconsistent with the trial court's findings in that no finding was made on this issue.

Having concluded that there was no request for special findings, we must now determine whether the specific finding on the issue of *alter ego* is necessarily implied from the general findings actually made. As hereinbefore pointed out, the trial court found that the contract in question was made between plaintiff and the corporation, and not between plaintiff and defendants ''as individuals''; that in making and entering into said contract defendants ''were acting in a representative capacity and on behalf of said defendant corporation''; that the services and materials were furnished at the instance and request of the corporation and not at the instance and request of defendants ''as individuals''; and that the sum found owing is due from the corporation and not from defendants ''as individuals.'' These general findings, in our opinion, are sufficient to permit the inference of the specific finding that the corporation was not the *alter ego* of defendants. A finding adverse to plaintiff on the *alter ego* issue is necessarily to be implied by the general finding made that defendants are not indebted to plaintiff.

DOES THE TRIAL COURT'S IMPLIED FINDING ON THE ALTER EGO DOCTRINE FIND SUPPORT IN THE RECORD?

*Yes.* It is a fundamental rule applicable to cases invoking the *alter ego* doctrine that the conditions under which the corporate entity may be disregarded necessarily vary according to the circumstances of each case inasmuch as the doctrine is essentially an equitable one, and for that reason is particularly within the province of the trial court. (*Stark* v. *Coker,* 20. Cal.2d 839, 846 [129 P.2d 390] ; *Automotriz etc. De*

*California* v. *Resnick,* 47 Cal.2d 792, 796 [306 P.2d 1, 63 A.L.R.2d 1042] ; *Associated Vendors, Inc.* v. *Oakland Meat Co.,* 210 Cal.App.2d 825, 836-837 [26 Cal.Rptr. 806].)

■ The two basic requirements for the application of this doctrine are: (1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow. (*Automotriz etc. De California* v. *Resnick, supra,* at p. 796; *Stark* v. *Coker, supra,* at p. 846; *Associated Vendors, Inc.* v. *Oakland Meat Co. supra,* at p. 837.) Both of these requirements must be found to exist before the corporate existence will be disregarded, the determination being primarily one for the trial court. (*Associated Vendors, Inc.* v. *Oakland Meat Co., supra,* at p. 837.)

In *Associated Vendors* this court had occasion to review the variety of factors which were pertinent to the trial court's determination under the particular circumstances of the cases there cited. We noted from a perusal of these cases that in all instances several of the factors were present. We also observed that it was particularly significant that where it was held that the trial court was warranted in disregarding the corporate entity, the factors considered were deemed not to be conclusive upon the trier of fact, but were found to be supported by substantial evidence. In the case at bench plaintiff relies on two of the variety of factors which the courts have considered in the application of the doctrine. These are: (1) the failure to issue stock; and (2) inadequate capitalization.

The record discloses, in the instant case, that the corporation was formed in June 1959 by 10 individuals, including defendants. Although an application for the issuance of stock was prepared the record is silent as to whether it was ever filed. However, no permit for the issuance of stock was ever granted, nor was any stock ever issued by the corporation.

■ The failure to issue any stock or apply for permission to do so is a factor that may be considered by the trial court in determining whether the corporate veil should be pierced and the individuals be held liable. (*Automotriz etc. De California* v. *Resnick, supra,* at pp. 796, 798; *Wheeler* v. *Superior Mortgage Co.,* 196 Cal.App.2d 822, 830 [17 Cal.Rptr. 291] ; *Claremont Press Pub. Co.* v. *Barksdale,* 187 Cal.App.2d 813, 816 [10 Cal.Rptr. 214] ; *Engineering etc. Corp.* v. *Longridge Inv. Co.,* 153 Cal.App.2d 404, 416 [314 P.2d 563].) While the

failure to issue stock or to apply for a permit is an indication that persons dealing through a corporation are in fact doing business as individuals it is not conclusive evidence thereof. (*Automotriz etc. De California* v. *Resnick, supra,* at p. 796; *Claremont Press Pub. Co.* v. *Barksdale, supra,* at p. 816; *Marr* v. *Postal Union Life Ins Co., supra,* 40 Cal.App.2d 673, 682.) The Supreme Court in *Automotriz* cites with approval the following statement in the *Marr* case: "While the fact standing alone that a corporation remains inchoate without stockholders or stock is not of itself determinative of an *alter ego* relationship upon its part, nevertheless it does indicate that such corporation *may* exist merely to serve the interests of another—a corporation or an individual." (P. 682; emphasis added.)

Another important factor which the trial court may also consider is whether there was an attempt to provide adequate capitalization for the corporation. (*Minton* v. *Cavaney,* 56 Cal.2d 576, 579 [15 Cal.Rptr.641, 364 P.2d 473]; *Automotriz etc. De California* v. *Resnick, supra,* pp. 796-797; *Wheeler* v. *Superior Mortgage Co., supra,* p. 830; *Associated Vendors, Inc.* v. *Oakland Meat Co., supra,* at pp. 839, 841-842.) "If the capital is illusory or trifling compared with the business to be done and the risks of loss, this is a ground for denying the separate entity privilege." (Ballantine, Corporations, pp. 302, 303; see also *Automotriz etc. De California* v. *Resnick, supra,* at p. 797.) In the present case, applying the time-honored rule that all conflicts on appeal must be resolved in favor of the respondent, and that all legitimate and reasonable inferences will be indulged in to uphold the findings of the trial court, the evidence supports a finding of adequate capitalization. The record discloses that the 10 persons who formed the corporation loaned it the sum of $24,910.41 as the initial operating capital, and that at the time the contract in question was entered into with plaintiff the corporation possessed the following assets: the sum of $14,634.45 remaining out of construction funds received from a lending institution; cash on hand in the sum of $947.53; equipment and trucks valued at $15,024.80; prepaid deposits in the sum of $771; and other items valued at $3,686.76. Its liabilities, at said time, amounted to approximately $8,400 owing to subcontractors. The record further discloses that plaintiff estimated the cost of completing the houses partially constructed by the corporation to be approximately $12,000, and that the corporation had a commitment from a lending

institution for additional construction loans in the sum of $22,500.[7]

It is apparent from the evidence that the instant case does not involve a situation where the corporation had no assets or capitalization at all, nor can it be said as a matter of law that the capital was illusory or trifling compared with the business to be done and the risks of loss. The contention made by plaintiff that at the time it entered into the subject contract the corporation was threatened with foreclosures and was insolvent is without foundation in the record.

The trial court was thus left with the uncontradicted fact that no permit for the issuance of stock was obtained and that no stock was issued by the corporation. As hereinabove indicated the presence of this factor, in and of itself, does not require the invoking of the equitable doctrine prayed for as a matter of law. The transaction of business by a corporation prior to the issuance of stock is not prohibited. (Corp. Code, § 25154.) The failure to issue stock is a factor to be considered by the trial court in connection with other factors warranting the trier of fact to disregard the corporate entity and with other circumstances in the case tending to negate that defendants were dealing through the corporation as individuals. Among the circumstances which the trier of fact was entitled to weigh against the failure to issue stock, bearing in mind that the burden of establishing the *alter ego* relationship was upon plaintiff, are the following: the factor of adequate capitalization; the fact that there were eight other persons who participated in the formation of the corporation and whose financial interest therein was equal to that of defendants; the obtaining of construction loans from a lending institution by the corporation upon loan applications signed by defendants as officers of the corporation; defendants informing plaintiff that it was dealing with the corporation and not with them as individuals; the holding of meetings by the directors of the corporation, and the keeping of minutes.

[7]It appears from the record that prior to entering into the agreement with plaintiff the corporation had purchased eight lots, had arranged for construction loans from a lending institution, and had undertaken to construct dwelling houses on said lots acting as its own general contractor. Because the construction costs were running over prior estimates it was determined to engage plaintiff general contractor to complete the houses upon the latter's estimate that the cost thereof would be the sum of $12,000. (Plaintiff Auer testified that the estimate given by him was $14,000.)

Accordingly, under the state of the evidence adduced in the instant case, the trial court was warranted in concluding that there was no unity of interest and ownership in the corporation and defendants, and that the separate personalities of the corporation and these individuals continued to exist. Upon a determination that the first requirement for the application of the doctrine is absent, the presence of the other requirement, i.e., that if the acts are treated as those of the corporation alone an inequitable result will follow, does not compel the piercing of the corporate veil.

As we pointed out in *Associated Vendors* the unhappy circumstance that a creditor will remain unsatisfied if the corporate veil is not pierced does not, in and of itself, produce the inequitable result contemplated by the *alter ego* doctrine.

The judgment is affirmed.

Bray, P. J., and Sullivan, J., concurred.