Stephen L. ROSENTHAL et al., Appellants,

v.

LEASEWAY OF TEXAS, INC., Appellee.

No. 968.

Court of Civil Appeals of Texas, Tyler.

Nov. 18, 1976.

Philip I. Palmer, Jr., Palmer, Palmer & Coffee, Dallas, for appellants.

Raymond B. McCoy, Dallas, for appellee.

McKAY, Justice.

This suit arose because Pollution Solutions, Inc. (Pollution) failed to pay vehicle lease rentals to appellee, Leaseway of Texas, Inc. (Leaseway), in the amount of $22,-322.05. The nature and amount of the debt was admitted by Pollution. Judgment was rendered by the trial court (without a jury) against Pollution and against Stephen L. Rosenthal, individually, and Metroplex Sanitation, Inc. (Metroplex) for the amount prayed for. Pollution did not appeal; Rosenthal and Metroplex bring this appeal.

Appellants Rosenthal and Metroplex submit three points of error, but the controversy centers upon the right of Leaseway to take judgment against Rosenthal and Metroplex for the debt of Pollution. Leaseway alleged that Pollution was incorporated on January 5, 1973, by Rosenthal as his alter ego for the purpose of the collection, treatment and disposal of waste materials, and that Pollution never had any genuine or separate corporate existence, but was used and existed for the sole purpose of permitting Rosenthal to transact his indi-

vidual business under a corporate guise. Leaseway further alleged that Rosenthal, acting through his alter ego, Pollution, negotiated and contracted for the vehicle lease, and that by reason of such acts Rosenthal, individually, became liable for the debt of Pollution.

Leaseway also alleged that Rosenthal on or about August 14, 1973, incorporated and organized Metroplex as his alter ego with the same purpose as Pollution and that Metroplex never had any genuine or separate corporate existence, but had been used for the sole purpose of permitting Rosenthal, individually, "to transact his individual business under a corporate guise." Rosenthal, Pollution and Metroplex answered with general denials.

The record reveals that Rosenthal financed the formation of the corporation Pollution at a cost of $1,000.00 and that 50,000 shares of no par value were authorized. No bylaws were ever adopted. There was never an election of directors. Rosenthal served as president from the inception of Pollution and received $15,000 in compensation. No shares of stock in the corporation were ever issued. Pollution did not maintain a share certificate or share register book. There has never been a meeting of the board of directors since incorporation. No corporate minute book was ever provided. No meeting of stockholders was ever held. Pollution engaged in the business of collection, treatment and disposal of solid waste materials by delivering same to a land fill in Hugo, Oklahoma, from February, 1973, through November, 1973, but ceased such business when prevented from using the land fill at Hugo. There was no stated capital, and the corporation did not maintain financial books and records and never prepared a financial statement. A bank account was maintained in the corporate name and Rosenthal was authorized to withdraw funds. There were no profits, and net losses exceeded $50,000. Pollution never paid a franchise tax to the State and never filed a Federal income tax return.

There are no findings of fact and conclusions of law in the record. However, the facts are not in dispute on the material issue—whether a creditor may pierce the corporate veil under the evidence as shown by this record.

The general rule in Texas as pronounced by Judge Calvert in *Pace Corporation v. Jackson,* 155 Tex. 179, 284 S.W.2d 340, 351 (1955), is:

> "Courts will not disregard the corporate fiction and hold individual officers, directors or stockholders liable on the obligations of a corporation except where it appears that the individuals are using the corporate entity as a sham to perpetrate a fraud, to avoid personal liability, avoid the effect of a statute, or in a few other exceptional situations."

This principle is reaffirmed in *Drye v. Eagle Rock Ranch, Inc.,* 364 S.W.2d 196, 203 (Tex.1963), and in *Bell Oil & Gas Co. v. Allied Chemical Corp.,* 431 S.W.2d 336, 340 (Tex.1968), and many other cases.

The above rule was followed but stated differently in *Minchen v. Van Trease,* 425 S.W.2d 435, 437 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n. r. e.). The Court in *Minchen* said the reasons for disregarding the corporate entity are "when the corporation is used to perpetrate a fraud, to evade an existing legal obligation, to achieve or perpetrate a monopoly, to protect a crime, to justify a wrong, to circumvent a statute, and when one corporation exists as a mere tool or business conduit of another corporation." It is noted that *Pace Corporation v. Jackson,* supra, uses the language, "to avoid personal liability," while the *Minchen* case says, "to evade an existing liability."

Leaseway plead that Pollution never had any genuine separate corporate existence and existed for the sole purpose of permitting Rosenthal to transact his individual business under a corporate guise as his alter ego, and that Pollution existed merely as a device to escape legal obligations and that the corporate entity should be disregarded and Rosenthal held personally liable for Pollution's debt.

The Texas Business Corporation Act provides in Art. 2.23 that, "The initial bylaws

of a corporation *shall* be adopted by its board of directors. . . ."; Art. 2.24 provides, "An annual meeting of the shareholders *shall* be held at such time as may be stated in or fixed in accordance with the bylaws"; Art. 2.31 provides, "The business and affairs of a corporation *shall* be managed by a board of directors"; and Art. 2.32 provides, "The number of directors *shall* be fixed by, or in the manner provided in, the articles of incorporation or the bylaws . . . ."; Art. 2.37 provides for the meeting of the board of directors; Art. 2.42 provides that, "The officers of a corporation *shall* consist of a president, one or more vice-presidents as may be prescribed by the bylaws, a secretary, and a treasurer, each of whom *shall* be elected by the board of directors . . . ." and "that the president and secretary *shall* not be the same person"; and Art. 2.44 provides, "Each corporation *shall* keep correct and complete books and records of account and *shall* keep minutes of the proceedings of its shareholders and board of directors . . . ." (Emphasis added.)

The language of the above listed articles in the Texas Business Corporation Act is mandatory, and the record reveals that Pollution and its owner Rosenthal did not comply with any of these requirements. The only action taken to constitute Pollution as a corporation was the obtaining of a charter. It appears from the record that Rosenthal treated the corporation as his alter ego. He was the sole owner, and Pollution did not exist except as the shadow of Rosenthal. Pollution was a sham corporation.

In *Sargent v. Highlite Broadcasting Co.,* 466 S.W.2d 866, 868 (Tex.Civ.App.—Austin 1971, no writ), it is stated:

> "A person who operates a corporation as a sham, treats the corporation as his alter ego, or treats the corporation in such a way so that the identity of interest and ownership between an individual and the corporation is such that the action of one can be said to be the action of the other, can be prevented from taking advantage of corporate defenses if this corporate form is being used or will be used to achieve an inequitable result. *American Petroleum Exchange, Inc. v. Lord,* 399 S.W.2d 213 (Tex.Civ.App.—Ft. Worth 1966, writ ref'd n. r. e.); *Pace Corporation v. Jackson,* 155 Tex. 179, 284 S.W.2d 340 (1955)."

An exception to the general rule forbidding the disregard of corporate entity "is not to be applied unless it is made to appear that there is such unity that the separateness of the corporation has ceased and 'the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice.'" *First National Bank in Canyon v. Gamble,* 134 Tex. 112, 132 S.W.2d 100, 103 (Tex.Com.App.1939, opinion adopted).

While each case involving disregard of the corporate entity must rest upon its own special facts, this court said in *Holmes v. Clow,* 533 S.W.2d 99, 101, 102 (Tex.Civ. App.1976, no writ):

> "In order to warrant piercing the corporate veil, the courts generally require the presence of one or more of the following factual situations: (1) evidence that the corporate entity amounts to a fraud, promotes injustice or it is relied on to justify a wrong, (2) that it was inadequately capitalized, (3) that an individual controls and manages the entity in such a manner that it becomes his alter ego, and (4) that the corporate formalities were not adhered to by the corporation."

Writing on the alter ego doctrine the court in *Auer v. Frank,* 227 Cal.App.2d 396, 38 Cal.Rptr. 684, 8 A.L.R.3d 1108, 1118 (1964) stated:

> "The two basic requirements for the application of this doctrine are: (1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow."

■ We are of the opinion that under the record here, situations (3) and (4) as set out in *Holmes v. Clow*, supra, are adequately shown to exist. Rosenthal organized, controlled and managed the corporation in such a manner that it became his alter ego, and the corporate formalities mandated by statute were ignored. And as set out in *Auer v. Frank*, supra, a requirement to pierce the corporate veil was met inasmuch as there was such unity of interest and ownership between Rosenthal and Pollution shown by the record that their separate personalities no longer existed, and if Rosenthal's acts were to be treated as those of Pollution an inequitable result would follow.

■ Rosenthal argues that there is no fraud shown in the record and no fraudulent transfer of assets and that adequacy of capitalization is not an issue. We believe the record amply demonstrates that Pollution was the alter ego of Rosenthal whether fraud was shown. However, Leaseway had no relationship with Metroplex, and we hold that Leaseway cannot attack the corporate existence of Metroplex. The only evidence attempting to show Metroplex liable was that some of the trucks Pollution leased from Leaseway were used by Metroplex for some period of time.

The record indicates that both Pollution and Metroplex are insolvent and no longer exist as business organizations or corporations.

■ Findings of fact and conclusions of law were requested but none were filed, and no complaint is made on appeal of the trial court's failure to prepare and file them. In that state of the record the judgment of the trial court should be affirmed if it can be upheld on any legal theory that has support in the evidence, *Bishop v. Bishop*, 359 S.W.2d 869 (Tex.1962), and we must presume that every fact issue and such implied findings as were necessary were found by the trial court in support of the judgment rendered. *Morris v. Texas Elks Crip-* *pled Children's Hospital, Inc.*, 525 S.W.2d 874, 881 (Tex.Civ.App.—El Paso 1975, no. writ); *Washington v. Law*, 519 S.W.2d 953, 954 (Tex.Civ.App.—Houston [14th Dist.] 1975, writ ref'd n. r. e.).

The judgment of the trial court is affirmed against Rosenthal; and as against Metroplex, the judgment is reversed and rendered that Leaseway take nothing.