EDWARD B. HANSON *vs.* FLORENCE S. BRADLEY & others.

Suffolk.   May 12, 13, 1937. — September 20, 1937.

Present: RUGG, C.J., CROSBY, DONAHUE, LUMMUS, & QUA, JJ.

*Corporation,* Corporate entity, Officers and agents, Stockholder, Creditor.
   *Mortgage,* Of real estate: validity; Of personal property: validity.
   *Equity Pleading and Practice,* Master: findings, report.   *Words,*
   "And/or."

A master's conclusion will not stand if inconsistent with his subsidiary
   findings.
The expression "and/or" ought not to be used by a master in his report.
Even if creditors of a corporation are also its stockholders or officers,
   they have the same rights against it as other creditors, except in cir-
   cumstances which require a court to disregard the corporate form to
   prevent fraud or injustice.
One who, shortly after the organization of a corporation, made with it a
   contract to serve as manager without having been deceived as to its
   financial status and in circumstances warranting an inference that he
   knew that it could not operate or use his services until it had spent
   large sums of money which it must borrow, could not maintain a suit
   in equity as a creditor to have declared invalid mortgages upon its
   entire property given by it in good faith to a stockholder who lent
   funds necessary for its enterprise.

BILL IN EQUITY, filed in the Superior Court on April 10,
1936.

After confirmation of a master's report except in certain
immaterial matters, *Greenhalge,* J., reported the suit for
determination by this court.

*W. Powers,* (*A. J. Lloyd, W. White,* & *D. Needham* with
him,) for the defendants.

*P. E. Troy,* (*T. W. Lawless* with him,) for the plaintiff.

LUMMUS, J.   The plaintiff contracted with the defendant
The Bennington Corporation on July 23, 1934, to manage the
Copley Square Hotel in Boston for three years, and is
entitled to damages for his discharge on February 28, 1936.
He contends that a second real estate mortgage on the hotel
for $270,000, and a chattel mortgage on its contents for

$50,000, held by the defendant Florence S. Bradley and foreclosed by her, are invalid as against his claim.

In the spring of 1934 four men, Breed, Hodder, Freese and Holm, found that they could buy a run down and closed hotel in Boston called the Copley Square Hotel for $150,000, and that the grantor would take back a mortgage for the whole purchase price. Breed had long been the financial agent of the defendant Florence S. Bradley of Bennington, Vermont. The defendant Thornton is her son. All three are trustees of the Florence Sartori trust, of which Thornton and his children are beneficiaries. Breed, acting for the four promoters, interested his cotrustees, and the defendant Bradley as an individual, in advancing money for the hotel enterprise. He told them "that he would protect their investments by a mortgage, and give them stock in the corporation, to be formed, as a bonus."

On July 11, 1934, the four promoters formed a Massachusetts corporation called The Bennington Corporation, to buy, mortgage and operate a hotel and restaurant. Its capital stock was one thousand shares of common stock without par value, which was to be paid for in full in cash. The four promoters took one share each at ten cents a share. On November 1, 1934, one hundred shares were issued to Thornton and forty shares to the trustees of the Florence Sartori trust; and ninety-nine shares were issued to Thelma D. Hodder, one hundred nineteen shares to Marjorie L. Breed, and ninety-eight shares to Framingham Centre Associates, the three last named being represented by the four promoters or some of them. All this stock was issued at ten cents a share. After that issue, the four promoters still held or controlled a majority of the stock. But on May 8, 1935, after a vote of authority by the directors, all the rest of the one thousand shares were distributed among various persons at the same price, and after that distribution Thornton and his wife, the defendant Bradley, and the trustees of the Florence Sartori trust, held in the aggregate five hundred fifteen shares, a majority of the stock.

About August 3, 1934, the corporation bought the hotel for $150,000 from one Rowell, giving him a purchase money

mortgage for the entire price. The corporation had already, on July 23, 1934, engaged the plaintiff to be manager of the hotel by a written contract. His term of employment was three years and his salary $6,000 a year, plus a bonus out of profits and certain living expenses for himself and his family.

As soon as the hotel was bought, the corporation began to repair it and put it into condition for business. On August 17, 1934, the corporation borrowed $1,000 from the Framingham Centre Associates, a voluntary association composed of three of the four promoters, who held as trustees for their wives, and gave the note of the corporation for the loan. On October 15, 1934, the corporation borrowed $2,000 from the defendant Bradley, and gave her therefor its demand note without interest. Up to that time, the only directors were the four promoters; but on October 29, 1934, Thornton was elected a director and vice-president.

The repairs and equipment required more money. The corporation received $10,000 from Thornton, who appears to have acted for the Florence Sartori trust, for he indorsed to the trust the note which the corporation gave him for the loan on November 1, 1934. A second mortgage on the hotel was given to Thornton to secure the loan of $10,000, and Thornton assigned it to the trust. The giving of this note and mortgage was ratified unanimously by the stockholders on November 1, 1934.

On the same day, November 1, 1934, after a general discussion of future advances to the corporation, the stockholders voted unanimously "that for all future advances made to the corporation by Mrs. Bradley and/or by the trustees of the Florence Sartori trust, this corporation shall give its demand note, with or without interest as may be agreed upon, for the amount of such advances, and shall, upon the request of the lenders, give to H. C. Thornton a mortgage on the hotel property to secure the total amount of such advances on the date of such request."

On December 18, 1934, the defendant Bradley lent $8,000 to the corporation, and surrendered her note for $2,000 dated October 15, 1934, receiving in exchange from Breed, the treasurer, the corporation's note for $10,000. This

action of the treasurer was ratified by the stockholders on January 7, 1935. In the winter and spring of 1935, before May 1, the corporation borrowed $10,500 from the Florence Sartori trust and $5,500 from the defendant Bradley, and the stockholders ratified this action. Thus, on May 1, 1935, the corporation had received as loans from the defendant Bradley $15,500 and from the Florence Sartori trust $20,500, part of which was secured by mortgage.

Shortly before May 8, 1935, Breed, Hodder and Freese (Holm having ceased to be a director), together with Rowell (the first mortgagee, who became treasurer and a director on May 8, 1935) met the defendants Thornton and Bradley and discussed "the Copley Square venture and the affairs of The Bennington Corporation, with particular reference to the moneys that Mrs. Bradley and the [Florence] Sartori trust already advanced and to be advanced, and with reference to stock control of the corporation and Mrs. Bradley then expressed her wishes in the matter." What her wishes were, the report does not state. But at a meeting of stockholders on May 8, 1935, Thornton stated to the meeting "that he was authorized on behalf of Mrs. Florence S. Bradley and the trustees of the Florence Sartori trust to advance to the corporation further sums of money to complete the renovation, remodeling and reopening of the hotel, upon condition that the corporation give a mortgage on the hotel property, upon demand, to secure the said advances, the said mortgage also to secure all advances made prior to this date, and, when the said mortgage is given, the $10,000 mortgage dated November 1st, 1934, is to be discharged." Thereupon it was unanimously voted "to accept the offer of Mr. H. C. Thornton, and that the officers of the corporation be and hereby are authorized and directed to execute and deliver to Mr. Thornton a mortgage on the hotel property to secure such advances as shall actually have been made to the corporation at the date of such mortgage by Florence S. Bradley and/or the trustees of the Florence Sartori trust and/or H. C. Thornton." Although there was an issue of stock on the same day, May 8, 1935,

as has already been shown, the stock was not issued until authorized by the directors at the meeting held on that day, apparently subsequent to the meeting of the stockholders, and it is very improbable that the new stock was voted upon the various matters that were acted on at the meeting of the stockholders. Without that new stock, the defendant Bradley and her associates were in a minority in the corporation.

At the same meeting of the stockholders on May 8, 1935, it was voted to ratify the act of the treasurer in borrowing $20,000 from the defendant Bradley on that day and giving her a note of the corporation therefor with interest at two and one half per cent.

The hotel was made ready to open, and did open, on October 1, 1935. Up to September 30, 1935, the corporation had been lent $148,500 by the defendant Bradley, and $121,500 by the Florence Sartori trust, a total of $270,000. The offer made by them through Thornton to the corporation at the meeting of May 8, 1935, to advance money enough to complete the repairs on the hotel so that it could be opened, had been fully performed by them. They were then in a position to demand the mortgage which was the "condition," accepted by the corporation, upon which they had lent the money. Accordingly, on September 30, 1935, in accordance with the vote of May 8, 1935, Breed as vice-president and Hodder as treasurer (he having become such on that day) executed a note of the corporation to Thornton for $270,000, payable in three years with interest payable semiannually at the rate of six per cent, and a second mortgage covering the hotel property to secure it, subject only to the first mortgage for $150,000 to Rowell. A special meeting of the stockholders was held on the same day, with nine hundred ninety-nine shares represented out of one thousand, the share owned by Holm being the only one unrepresented. Apparently he had ceased to be actively interested. The stockholders voted unanimously to ratify the execution of this note and second mortgage, and authorized the delivery of them to Thornton. They were then

delivered, and the mortgage was recorded the next morning, October 1, 1935. Apparently the earlier mortgage for $10,000 was discharged.

The hotel business was not successful. During October and November, 1935, the receipts from the operation of the hotel were not enough to pay its creditors. The corporation had no money. It could not borrow on its own credit. A note for $50,000, payable in monthly instalments, was negotiated at a bank on November 26, 1935, upon the indorsements of Breed, Freese, Hodder, Thornton and Mrs. Bradley. Pursuant to a vote of the directors, the corporation gave to Thornton and Mrs. Bradley a chattel mortgage covering all the personal property in the hotel to secure them upon their indorsements. This was duly recorded. The money received for the note was used to pay some of the smaller creditors in full and twenty per cent of the larger claims, notes of the corporation payable in instalments being given for the balance. The plaintiff and a few other creditors declined to accept such a settlement.

The hotel struggled on. The corporation borrowed $42,-700 more from the defendant Bradley, and $15,200 more from the Florence Sartori trust. About February 18, 1936, the defendant Thornton asked the plaintiff to cancel his contract, and the plaintiff refused to do so. On February 21, 1936, the defendant Bradley bought the note held by the bank. She also acquired from Thornton the $270,000 note and the second mortgage on the real estate. On February 27, 1936, Thornton and Breed caused to be formed a Massachusetts corporation called Thornton Associates, Inc., with one thousand shares of stock without par value, of which Thornton took nine hundred ninety-eight shares. The directors of The Bennington Corporation at a meeting on February 28, 1936, at which Breed, Hodder, Freese and Thornton were present, voted to authorize and direct Hodder as treasurer to lease the hotel and its contents to Thornton Associates, Inc., for ten years. The lease was executed on the same day. On the same day Thornton told the plaintiff of the lease, and said that The Bennington Corporation no longer had a hotel for him to manage. On

March 28, 1936, the defendant Bradley foreclosed both the chattel mortgage and the second mortgage on the real estate, and bought in the mortgaged properties for amounts that left nothing for unsecured creditors.

By stipulation, $12,000 of the proceeds of the foreclosures was deposited with counsel for the defendants, and it was stipulated "that, if it is finally determined in this cause that the defendant Florence S. Bradley is not entitled to hold either of said mortgages as against the plaintiff" so much as shall be established by final decree in this cause to be due the plaintiff, shall be paid to him; but "if it is finally determined that the defendant Florence S. Bradley is entitled to hold both of said mortgages as against the plaintiff," the money shall be paid to her. We interpret this stipulation as meaning that the plaintiff is entitled to be paid if either mortgage is invalid as against him.

The plaintiff was paid his salary in accordance with his contract through November, 1935. On December 1, 1935, he was owed $2,061.46 for personal and maintenance expenses. A proposal for a reduction of his salary and other charges failed because its conditions were not performed. Up to February 28, 1936, he was paid $1,091.46 on his account, together with $750 on his salary amounting to $1,500, leaving $1,750 due him. His contract provided that "if the Company should sell the property and/or business, or should discontinue the business for economic reasons, during the period of this contract, it agrees to pay forthwith to the Manager, the full balance of salary that would become due to him from the time of such discontinuance until the end of the term of this contract." This provision seems to us applicable. Under it the plaintiff is owed $8,500, in addition to the $1,750, before mentioned; a total of $10,250 owed him by The Bennington Corporation, with interest from February 28, 1936.

The case comes before us on a master's report, which was confirmed with unimportant exceptions. The judge reserved and reported the case without decision.

The master made findings purporting to show domination of the corporation by the defendants Thornton and Bradley.

Those findings are not as lucid as they might have been. He finds: "The defendants Thornton and Bradley were stockholders, directors and/or officers of the defendant [The] Bennington Corporation, and as such were in a position to dominate, and they did dominate the affairs of The Bennington Corporation, and they used their position to get for themselves a second mortgage in the sum of $270,000 on the real estate of the defendant [The] Bennington Corporation, dated September 30, 1935; thereby securing to themselves preferment to the extent of this security over the plaintiff Hanson, and other creditors."

As matter of English, the use of the vague expression "and/or" makes it impossible to discover just what relation to the corporation the master finds that the defendants Thornton and Bradley held. All that we can be sure of is that they were stockholders or directors or officers. Such an expression ought not to be used by a master in his report. *Grandchamp* v. *Costello*, 289 Mass. 506. *Employers Mutual Liability Ins. Co.* v. *Tollefsen*, 219 Wis. 434. "As such" — namely, as stockholders or directors or officers — they "were in a position to dominate, and they did dominate the affairs of The Bennington Corporation," the master avers. Their power of domination in any of those capacities until after the meeting of stockholders held on May 8, 1935, seems doubtful. The vote at that meeting by which they became entitled to the mortgage for $270,000 was unanimous. Such power as they had seems to have resulted primarily from the fact that the corporation looked to them for substantially all its funds. It is well settled that a master's conclusion cannot stand if inconsistent with subsidiary facts found by him. *MacLeod* v. *Davis*, 290 Mass. 335. *Kasper* v. *H. P. Hood & Sons, Inc.* 291 Mass. 24. *Israel* v. *Sommer*, 292 Mass. 113, 121–122. But in the present case we need not consider whether the general finding of domination can be sustained, for if sustained we think it indecisive.

The same is true of another general finding of the master: "I find that the records of the financial transactions between the defendant Bennington Corporation and the de-

fendant Bradley, and with the trustees of the [Florence] Sartori trust and the defendant Thornton, are part of a device by which it is sought to authenticate a real estate mortgage given to the defendant Thornton for his benefit and the benefit of his mother the defendant Bradley in an attempt to give them mortgage security for the repayment to them of moneys which they invested as capital in their own enterprise." Subsidiary findings show that the mortgage was given, not for the benefit of Thornton, who had invested no "moneys," but for the benefit of the defendant Bradley and the Florence Sartori trust. The enterprise was originally not that of the defendants named, but that of the promoters, who invested in it individually and as trustees of the Framingham Centre Associates a sum not negligible. All except Holm retained an active interest in the enterprise until the mortgages were foreclosed. "Device" is a mere epithet; the facts are made clear by subsidiary findings. But again we need not consider whether the general finding can stand, for if it should stand it would not be decisive.

The further finding "that the defendant Thornton, acting not only for himself, but also for his mother, the defendant Bradley, and in this behalf with her full knowledge and assent, dominated and controlled the policies of the defendant [The] Bennington Corporation; that Breed and Hodder obeyed his orders; that Thornton pleased to get rid of plaintiff Hanson, and dismissed him . . .," evidently refers to the situation in February, 1936, long after the rights of the defendant Bradley with respect to the mortgages had become fixed. Domination by the defendant Thornton at that time has little importance.

We must start, as this court did in *Albert Richards Co. Inc.* v. *Mayfair, Inc.* 287 Mass. 280, 288, by accepting the consequences of the theory that a corporation is an entity separate from the stockholders and officers. These may be creditors and even secured creditors of the corporation, with every right that a stranger might have; except so far as in exceptional cases courts find it necessary to restrict their rights in order to prevent fraud or injustice through

the use of corporate forms. *Gardiner* v. *Treasurer & Receiver General*, 225 Mass. 355, 367. *Hallett* v. *Moore*, 282 Mass. 380, 399. *New England Theatres, Inc.* v. *Olympia Theatres, Inc.* 287 Mass. 485, 493. *New Colonial Ice Co. Inc.* v. *Helvering*, 292 U. S. 435, 442. *Metropolitan Holding Co. Inc.* v. *Snyder*, 79 Fed. (2d) 263. *Hoffman Wall Paper Co. Inc.* v. *Hartford*, 114 Conn. 531. *Rapid Transit Subway Construction Co.* v. *New York*, 259 N. Y. 472, 487, *et seq.* *Salomon* v. *A. Salomon & Co. Ltd.* [1897] A. C. 22. *Daimler Co. Ltd.* v. *Continental Tyre & Rubber Co.* (*Great Britain*) *Ltd.* [1916] 2 A. C. 307.

The original purpose of laws permitting the formation of corporations was to enable stockholders to put at the risk of the business capital reasonably adequate for its needs, and thereby keep free from that risk their uninvested assets and their personal responsibility. That, as our corporation laws have long attested, has been deemed consonant with the public interest, and a fair compromise between the desire of investors for the fullest immunity and the desire of creditors for the fullest means of satisfaction.

Incorporators have not always been satisfied to take even the limited risk just stated. They have sought to make available to general creditors, even to tort creditors, only an amount of capital which is either illusory or trifling compared with the business to be done, while the incorporators advance the capital really necessary for the business in the capacity of competing creditors or even in that of secured creditors. In other words, they seek personal immunity without providing any fund to which creditors may resort. This is not unusual in the organization of corporations which are subsidiaries or affiliates of others, but the practice is not confined to them.

The problems that arise where a corporation doing business with inadequate capital is, almost of necessity, under the domination of individuals or of another corporation, have been said to be "still enveloped in the mists of metaphor." *Berkey* v. *Third Avenue Railway*, 244 N. Y. 84, 94. They are discussed in Latty, Subsidiaries & Affiliated Corporations (1936). Without attempting to discuss them in

this opinion, we refer only to the cases in this Commonwealth that have touched upon them. *Finnish Temperance Society Sovittaja* v. *Raivaaja Publishing Co.* 219 Mass. 28. *Finnish Temperance Society Sovittaja* v. *Finnish Socialistic Publishing Co.* 238 Mass. 345, 355. *Merrimac Chemical Co.* v. *Moore,* 279 Mass. 147, 157. *New England Theatres, Inc.* v. *Olympia Theatres, Inc.* 287 Mass. 485, 493. Nearest to the present case are those in which the incorporators of an inadequately capitalized corporation have been denied the right to compete in the capacity of money lenders with general creditors in the distribution of the assets. *Albert Richards Co. Inc.* v. *Mayfair, Inc.* 287 Mass. 280, 288. *Centmont Corp.* v. *Marsch,* 68 Fed. (2d) 460. *In re Rickshaw, Inc.* 12 Fed. Sup. 424. Compare *Duffy* v. *Treide,* 75 Fed. (2d) 17, 20.

We do not need to discuss those problems at large in this case, for the facts do not require us, at the instance of the plaintiff, to take the corporate transactions of The Bennington Corporation at other than their face value. The right and the duty of courts to look beyond the corporate forms are exercised only for the defeat of fraud or wrong, or the remedying of injustice. In the present case we have a corporation formed without substantial capital, relying on borrowing money to make valuable a hotel that it was buying on credit. The plaintiff dealt with that corporation. There is nothing to show that he was deceived. The fair inference is that he knew the worthlessness of the corporation with which he contracted, and knew that his contract was of no value unless the corporation could borrow money. He must have known that lenders have a habit of demanding security. The defendant Bradley and the Florence Sartori trust lent the corporation the necessary money, in large and increasing amounts, upon the faith of a unanimous vote of the corporation that it would secure the loans by a second mortgage upon the hotel. When that mortgage was given, it was not a preference given by directors or managers of a corporation to themselves (*Albert Richards Co. Inc.* v. *Mayfair, Inc.* 287 Mass. 280, 289), but the fulfilment of an obligation for which an equitable lien had existed ever

since the loans were made. *Pinch* v. *Anthony*, 8 Allen, 536. *Westall* v. *Wood*, 212 Mass. 540. *Ballentine* v. *Eaton*, 297 Mass. 389, 393. *Sexton* v. *Kessler & Co. Ltd.* 225 U. S. 90. 41 Am. L. R. 361, 362. As to the note for $50,000 secured by a chattel mortgage, the defendant Bradley was an indorser, and took it over with the security when the corporation proved unable to pay, as was her right.

The plaintiff was not wronged by the fact that the corporation was organized with a trifling capital and could not live except upon borrowed money; nor by the fact that the lenders insisted on security. He knew the essential facts and accepted the situation. Money borrowed from the defendant Bradley and the trust enabled the corporation to pay his salary for a long time. *New York Trust Co.* v. *Carpenter*, 250 Fed. 668, 678. *Gledhill* v. *Fisher & Co.* 272 Mich. 353. *Mayer* v. *Eastwood, Smith & Co. Inc.* 122 Fla. 34. *J. Francis Hock & Co.* v. *Strohm*, 166 Md. 253. See also *McCarthy* v. *Parker*, 243 Mass. 465. The case is to be distinguished from *Albert Richards Co. Inc.* v. *Mayfair, Inc.* 287 Mass. 280, 284, where the plaintiff was apparently ignorant of what was done, and the defendants were found guilty of "positive and actual fraud."

The result is, that the bill should be dismissed with costs as to all defendants except The Bennington Corporation, and that a decree should be entered for the plaintiff against that corporation for the payment to the plaintiff of $10,250 with interest from February 28, 1936, and costs. *Darling-Singer Lumber Co.* v. *Commonwealth*, 290 Mass. 488, 489. *Somerville National Bank* v. *Hornblower*, 293 Mass. 363, 367.

*Ordered accordingly.*