**BLOND LIGHTING FIXTURE SUPPLY COMPANY, Appellant,**

v.

**Donald D. FUNK et al., Appellees.**

**No. 14389.**

Court of Civil Appeals of Texas.

San Antonio.

June 2, 1965.

Vaughan & Vaughan, San Antonio, for appellant.

Morriss, Boatwright, Lewis & Davis, Frank D. Masters, San Antonio, for appellees.

CADENA, Justice.

This is an appeal from a summary judgment rendered against appellant, plaintiff below.

The suit was filed by appellant, Blond Lighting Fixture Supply Company, against Lance Electric, Inc., a Texas corporation, Lance E. Williams, Donald D. Funk and Wm. Matera. The trial court entered judgment in favor of appellant against Lance Electric, Inc., but granted the motions for summary judgment of appellees, Funk, Matera and Williams, and entered judgment that as to them appellant take nothing. Lance Electric, Inc., did not appeal from the judgment against it.

Appellant, Blond Lighting Fixture Supply Company, will be referred to herein as plaintiff. Lance Electric, Inc., will be designated as the corporation. Appellees, Donald D. Funk, William Matera and Lance E. Williams, will be referred to collectively as defendants, and individually as Funk, Matera and Williams.

Plaintiff's suit was on an open account to recover for goods sold and delivered to the corporation, and for attorneys' fees. Plaintiff sought judgment against the corporation and against the defendants individually. It alleged that the goods were delivered to the corporation "at the special instance and request" of the corporation. The petition alleged that Williams and Funk were incorporators of the corporation and members of its original board of directors, and that Matera "has taken over said CORPORATION and is either the Receiver for such CORPORATION or Trustee for the creditors of such CORPORATION." The petition contained no other allegations which might serve as the basis for imposing liability on the defendants.

In response to plaintiff's motion, all books and records of the corporation were deposited in the registry of the trial court and are part of the record on this appeal.

Defendants filed separate motions for summary judgment, reciting in substance that the pleadings and the corporate records showed that there was no genuine issue of material fact with reference to the liability of defendants. Matera further stated, under oath, that he had never been the receiver of the corporation or trustee for its creditors.

In response to these motions, plaintiff filed what it labeled its "Opposition to Defendants' Motions for Summary Judgment." So far as relevancy to the questions presented in this appeal is concerned, the only affidavit filed by plaintiff was that of one of its counsel of record, consisting of recitals from the records of the corporation. The contents of this affidavit will be revealed as we discuss the question of the individual liability of the defendants.

We dispose, at the outset, of the assertion made by plaintiff in its brief to the effect that it "was dealing with defendant corporation, a new corporation, on the strength of its officers, directors and backers." Plaintiff's pleadings contain no such allegation, and there is nothing in the record which would tend to support this statement.

### The Liability of Wm. Matera

Most of plaintiff's complaints are directed toward the course of dealings between the corporation and Matera. Its attorney's affidavit recites that the corporate records show that Matera was present at every directors' and shareholders' meeting; that at the organizational meeting of the board of directors Matera was named assistant secretary, with authority to co-sign checks and to assist the president, Williams, in borrowing money for the corporation's operations; that at a shareholders' meeting held on August 8, 1960, resolutions were adopted requiring the prior written approval of

Matera before any new jobs could be undertaken by the corporation and before the corporation could incur any new "liabilities for material or labor"; that at a shareholders' meeting held on September 12, 1960, Matera suggested that the corporation could perhaps be liquidated with a loss of only $6,000.00, and that if Williams would perform the work under Matera's direction and put up one-half of the loss, the work could be done. At this meeting, after Williams had refused to "indicate his acceptance of this suggestion," he was removed from his positions as president and member of the board of directors.

The affidavit of plaintiff's counsel asserts that "great quantities of money were owed to the corporation" by Matera, and that these, "apparently," remained unpaid. The affidavit also points out that on September 22, 1960, the corporation's check No. 922, in the sum of $1,400.00, payable to plaintiff, was signed by Funk, the secretary-treasurer, and subsequently marked "void." Thereafter, on October 4, 1960, the corporation's check No. 923, in the amount of $4,344.98, payable to Matera, was signed by Funk.

Plaintiff's counsel further swore that Matera paid $1,000.00 for stock in the corporation; that no other shareholder except Williams paid for his stock, and that the stock paid for by Matera was "apparently issued in someone else's name."

From the above recitals from the corporate records, plaintiff's counsel concludes that Matera, an officer of the corporation, was the "custodian of the assets" of the corporation, with the duty and obligation of "controlling the purse strings of the corporation," and that in August, 1960, "he assumed full control of the corporation."

▪ As can be seen, plaintiff presented nothing to substantiate its allegation in its petition that Matera was receiver of the corporation or trustee for its creditors. There is, therefore, no basis for holding Matera liable either as receiver or trustee.

Nor can he be held liable as a director. Plaintiff has not shown that Matera was ever a director, and the corporate records establish that he was not.

An examination of the corporate records on which plaintiff relies reveals that plaintiff is mistaken in its assertion that Matera owed "great quantities of money" to the corporation. The record reflects that on February 12, 1960, Matera and the corporation entered into a contract under which the corporation was to do certain electrical work on a project for which Matera was the general contractor. Under the contract, the corporation was to receive $69,435.00 from Matera for the work. There is nothing to indicate that this price was not fair and reasonable. In fact, the total cost of the work done by the corporation under this contract was in excess of $72,000.00, and the books indicate that the corporation received this amount from Matera. There are, as the opposing affidavit states, other entries showing other amounts owing to the corporation by Matera. But, contrary to plaintiff's conclusion that these debts "apparently" had not been paid, the records show that the corporation received all money due it from Matera. An examination of the corporate books reveals that, in fact, the corporation actually received sums from Matera which exceeded by more than $1,000.00 his total indebtedness to the corporation.

With reference to the check in the amount of $4,344.98 which was issued to Matera in October of 1960, after a check payable to plaintiff (and other checks payable to other creditors, including the law firm which represented the corporation) had been voided, subsequent entries reveal that this sum was disbursed in payment of debts of the corporation. These facts were directly stated, with references to the relevant entries in the corporate books, in one of the affidavits offered in support of the motions for summary judgment, and plaintiff has offered nothing which denies even in a general way the accuracy of these facts.

■ Even if Matera did pay for capital stock of the corporation which, as the opposing affidavit says, "apparently" was issued in the name of someone else, this would impose no liability on Matera. If he was in fact a stockholder who had chosen to have the stock registered in the name of another, he had fully paid for his stock. Under Art. 2.21(A), V.A.T.S. Business Corporation Act, a subscriber to stock is under no obligation to the corporation or to its creditors other than the obligation to pay to the corporation the full amount of the consideration for such shares.

### The Liability of Williams and Funk

The charter of the corporation was approved by the Secretary of State on January 20, 1960. Williams and Funk were two of the original incorporators. The Articles of Incorporation recite that the corporation shall be authorized to issue 100 shares of voting common stock, of a par value of $10.00 each, and 1,900 shares of non-voting common stock, each having a par value of $10.00.

■ The corporate records show that Williams was issued 19 shares of voting stock and 79 shares of non-voting stock. One share of voting stock and one share of non-voting stock were issued to Funk. One of the incorporators, who was also a director, was issued 79 shares of voting stock and 19 shares of non-voting stock, while another incorporator, the wife of Williams, also a director, received one share of voting stock and one share of non-voting stock. Neither of these last two shareholders is a party to this suit. No other stock was issued by the corporation at any time.

Since the affidavit of plaintiff's counsel states that Williams paid for his stock, there is no basis for holding Williams liable under Art. 2.21(A), V.A.T.S. Business Corporation Act.

■ The minutes of the organizational meeting of the board of directors show that Williams, who was elected president, presented a duplicate deposit slip showing that $2,000.00, representing the full par value of all 200 shares of stock issued, had been deposited in the bank. Further, the affidavit of plaintiff's counsel states that Williams paid $1,000.00 for his stock, and that Matera had paid $1,000.00 for capital stock issued by the corporation. It is thus undisputed that the corporation received full payment for every share of stock issued. Whether Funk paid for his two shares personally, or whether they were paid for by Matera as a gift to Funk, or whether they were paid for by Matera and held by Funk for the benefit of Matera is irrelevant.

■ It is conceded that Williams and Funk served as directors and officers of the corporation. But plaintiff's opposing affidavit states no facts which might form the basis for imposing liability on the directors. The liability imposed on directors by Art. 2.41 of the Texas Business Corporation Act is a liability to the corporation, not to its creditors. Even if the facts were such as to impose liability on Williams and Funk under the statute, it would avail plaintiff nothing. Plaintiff seeks no recovery for or on behalf of the corporation or its creditors. It seeks recovery solely for its own benefit. See 14 Tex.Jur.2d, Corporations, p. 487, § 395.

■ In the absence of a showing of special facts creating directorial liability, the general rule that a director is not liable to the creditors of the corporation is applicable. 14 Tex.Jur.2d, Corporations, p. 466, § 363.

Plaintiff asks that this Court "pierce the corporate veil" in order to impose personal liability on Williams and Funk. It should be pointed out that Williams and Funk, together, owned only 20% of the voting stock, and there is no showing that they in any way controlled the two persons who owned the other 80%. Nor is there any showing that these other shareholders, at any time, were guilty of any fraud or wrongdoing.

The rule governing the application of the "piercing" doctrine was well stated by Judge Pope, speaking for this Court, in Atomic Fuel Extraction Corp. v. Estate of Tom Slick, Tex.Civ.App., 386 S.W.2d 180, 191, as follows:

" * * * Hanson v. Bradley, 298 Mass. 371, 10 N.E.2d 259, states the law which the trial court correctly applied:

" 'The right and the duty of courts to look beyond the corporate forms are exercised only for the defeat of fraud or wrong, or the remedying of injustice. In the present case we have a corporation formed without substantial capital, relying on borrowing money * * *. The plaintiff dealt with that corporation. There is nothing to show that he was deceived. The fair inference is that he knew the worthlessness of the corporation with which he had contracted, * * *.'

"The Texas decisions follow the same rule. Pace Corporation v. Jackson, 155 Tex. 179, 284 S.W.2d 340; Staacke v. Routledge, 111 Tex. 489, 241 S.W. 994; Noblitt v. Barker, Tex.Civ. App., 97 S.W.2d 1010; Seymour Opera-House Co. v. Wooldridge, Tex. Civ.App., 31 S.W. 234, 235. Accord, Farrier v. Hopkins, 131 Tex. 75, 112 S.W.2d 182."

■ Plaintiff presents nothing to indicate that the corporation was formed as a means of perpetrating fraud, or that it was operated as a mere tool or business conduit of another corporation or as the alter ego of an individual, or that the corporate form is being used as a means of evading existing obligations, or that the corporation was used to circumvent a statute, or to protect crime or justify wrong. Under these circumstances, there is no justification for disregarding the corporate entity. See Houston-American Life Ins. Co. v. Tate, Tex.Civ.App., 358 S.W.2d 645, 656, no wr. hist.

■ Plaintiff complains of the failure of the trial court to ascertain which material facts existed without substantial controversy, and which material facts were actually controverted in good faith. In support of this point of error plaintiff relies on Rule 166–A(d), T.R.C.P. But that rule contemplates such action by the trial court only when judgment is not rendered on the whole case, so that a trial is to follow. Here, the judgment that plaintiff recover from the corporation and that it take nothing against the individual defendants, disposed of all parties and all issues in the case. Rule 166–A(d) is, therefore, inapplicable.

There being no error, the judgment of the trial court is affirmed.