**P. L. (Pinkle) GEORGE, Appellant,**

v.

**HOUSTON BOXING CLUB, INC., et al.,**
**Appellees.**

**No. 41.**

Court of Civil Appeals of Texas.

Houston (14th Dist.).

Dec. 20, 1967.

Rehearing Denied Jan. 24, 1968.

James C. Brady, Houston, for appellant.

John H. Caldwell, Ernest C. Hurst, Caldwell & Hurst, Houston, for appellees.

SAM D. JOHNSON, Justice.

This was an action for damages for breach of contract brought by the appellant, P. L. (Pinkie) George against two appellees, the Houston Boxing Club, Inc., and K. S. (Bud) Adams, Jr. The "contract" relied upon was a letter agreement dated February 1, 1965 by and between the Houston Boxing Club, Inc., one of the appellees, and P. L. (Pinkie) George, the appellant. K. S. (Bud) Adams, Jr., was not a party to the letter agreement. The trial court granted

summary judgment for the defendant Boxing Club and also for the defendant Adams, both of whom are appellees here.

Prior to the execution and delivery of the letter agreement of February 1, 1965, upon which appellant relies, appellant and one of the appellees, Houston Boxing Club, Inc., had entered into a previous contract dated September 1, 1964. By the terms of this prior contract, appellant, George, had been engaged by appellee, Houston Boxing Club, Inc., as a matchmaker for the purpose of promoting professional boxing matches. This prior contract included a provision giving either party thereto the unconditional right to cancel upon thirty days prior written notice. This prior written contract was terminated on February 1, 1965 by a mutual release and the two parties thereto, George and the Houston Boxing Club, Inc. At the time of this release and cancellation, at least, appellant and the appellee, Houston Boxing Club, Inc., had no contractual obligation to each other. It also must be presumed that at this point the appellee, Adams, was under no obligation to appellant.

It was at this juncture that the letter agreement of February 1, 1965, on which this action is based and to which appellant seeks to attach contractual liability, was entered into between appellant and the Houston Boxing Club. The complete letter agreement involved is as follows:

"February 1, 1965

Mr. P. L. (Pinkie) George
Houston, Texas

Dear Mr. George:

"This letter will confirm the agreement of the undersigned, Houston Boxing Club, Inc., to retain you as its Matchmaker for the purpose of promoting professional fights between Cleveland Williams and other parties, provided Cleveland Williams recovers from the injuries recently sustained by him and return to professional boxing.

"In the event you are hereafter retained by Houston Boxing Club, Inc., as its Matchmaker as above provided, you shall perform the duties and services enumerated in that certain Agreement dated September 1, 1964, by and between Houston Boxing Club, Inc., and P. L. George, by the terms of which you were retained as the Matchmaker for the said Houston Boxing Club, Inc., and you shall be entitled to receive as consideration for such services, ten per cent (10%) of the net proceeds, as 'net proceeds' is defined in said Agreement dated September 1, 1964, received by Houston Boxing Club, Inc., from matches arranged by you for Cleveland Williams; provided, however, that you shall not be entitled to receive from any one promotion a sum in excess of $10,000.00, until such time as A & B Boxing Club, Inc., and K. S. Adams, Jr., shall have recovered from such net losses sustained by them, not to exceed, however, the sum of $200,000.00.

"If the foregoing is in accordance with your understanding of our agreement concerning the matters covered therein, please indicate your acceptance hereof and agreement hereto by signing this letter in the space provided below.

Very truly yours,

Houston Boxing Club, Inc.

By /s/ E. C. Hurst

Accepted and Agreed to:

/s/ P. L. (Pinkie) George
P. L. (Pinkie) George"

The original contract of September 24, 1964, between George and the Houston Boxing Club, Inc., was for the purpose of promoting and arranging boxing matches. Subsequent to the execution of this original contract between George and the Houston Boxing Club, one Cleveland Williams was physically incapacitated for a number of months and was unable to box. This is a factor of some significance, for even though

his name did not appear on the original contract of September 24, 1964, the expectation of the parties thereto apparently was that boxing matches involving Cleveland Williams, and others, might be promoted by the Boxing Club. During the period of Cleveland Williams' incapacity, it appeared that he might not recover or be able to box again. The original contract of September 24, 1964, was rescinded on February 1, 1965, and on this same date, the "letter agreement" was executed.

The record before the court indicates that all of the money that went into the Houston Boxing Club, some $7,500.00, was furnished by the defendant, Adams, and that the stock of the Houston Boxing Club was held in trust for Adams' children. The record further indicates that the appellee, Adams, had loaned or advanced the sum of $7,500.00 to the Houston Boxing Club, Inc., for working capital and that no part of such sum had been repaid until the time the corporation was dissolved. At the corporation's dissolution, the remaining assets, amounting to $900.24, was paid to Adams. The author of the Houston Boxing Club letter dated February 1, 1965, was E. C. Hurst, one of the attorneys for Adams. He was also the person who held the Boxing Club stock in trust for Adams' children and was an officer in the Houston Boxing Club.

It is undisputed in the record that the Houston Boxing Club promoted no professional boxing matches after February 1, 1965, and received no proceeds or income from the promotion of any boxing matches thereafter. It is further undisputed that after February 1, 1965, the appellant, George, rendered no services of any kind to the Boxing Club, received no proceeds from the Boxing Club for the promotion of any boxing matches, and that he neither arranged nor attempted to arrange boxing matches after that date.

George's essential affirmative contention is that the corporation, the Houston Boxing Club, was the "alter ego" of the second defendant, Adams, and that the "corporate fiction" should be disregarded, attaching liability to Adams because he received the assets of the dissolved corporation "at a time (when) this corporation had wholly failed to carry out and perform its contractual obligation to plaintiff." Appellant, George, contends that the trial court erred in its granting the motions for summary judgment for the defendants in the face of such contentions because, he alleges, there were material issues of fact in this regard.

Rule 166–A(c), Texas Rules of Civil Procedure, providing for summary judgment states: "The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that * * * there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." We are in accord with the trial court's determination that this was an appropriate case for granting the motions for summary judgment.

The initial inquiry is whether or not an enforceable obligation on the part of the Houston Boxing Club, Inc., was created with the execution of the letter agreement, the instrument and "contract" on which this action is predicated. Absent affirmative action on the part of the appellant, George, we believe it did not.

The letter agreement clearly expresses the condition that George perform certain duties and services that were previously enumerated in the prior written contract of September 1, 1964. Appellant does not contend that he performed any of such duties or services, but only claims that he was willing, ready and able to do so.

A second expressed condition in the letter agreement is to the effect that appellant's right to any compensation is dependent upon "net proceeds" being received by appellee, the Houston Boxing Club, from matches involving Cleveland Williams and promoted by the Boxing Club. The record is quite clear that no such proceeds were received. Appellant makes no allegation or

132

contention that the Boxing Club received proceeds of any nature to any obligation on the part of the Boxing Club.

■ A third contention of the letter agreement is based on the requirement that appellant arrange boxing matches for Cleveland Williams before he is entitled to compensation. Appellant arranged no boxing matches and provided no service in this connection. The letter agreement was, by its terms, clearly conditional and contingent. The conditions and contingencies must be satisfied to occasion an obligation to George on the part of the Boxing Club. "A contract may be conditional; and the parties thereto may prescribe the conditions under which they shall be bound thereby. A conditional contract is an executory contract, the performance of which depends on a condition. A condition in a contract is a clause which has for its object to suspend, rescind, or modify the principal obligation." 17A C.J.S. Contracts § 337, Conditions in General, p. 315.

■ Even if the contract were not conditional and if an affirmative obligation on the part of the Boxing Club had been shown, the record establishes that as a matter of law, the app llee, Adams, was not the alter ego of the Houston Boxing Club, Inc., and would not be responsible or liable for its contracts. A corporate entity may not be disregarded simply because it stands as a bar to a litigant's recovery of property. Here the appellant makes no specification of the theory under which he attempts to disregard the corporate form and cast personal liability on the individual, though it would appear to be that the corporate vehicle was used in order to avoid an existing legal obligation to the appellant, George. If there was any such existing obligation, it was clearly terminated by the mutual release and cancellation effected by the parties on February 1, 1965. There could have been no resort to the corporate entity to avoid an existing obligation when such obligation, if any, arose under an agreement to which the corporation itself was a party. Additionally, we find no Texas cases applying the alter ego doctrine to a situation where the individual owned none of the outstanding stock, which is the situation in the case at bar.

■ Lastly, the letter agreement of February 1, 1965, was, on its face, solely between appellant and the Houston Boxing Club. Appellant's prior contractual relation, which had been mutually terminated, was with this same corporation. The record makes clear that the appellant, at all material times, knew Adams, knew of his relationship with this corporation, and was cognizant of the fact that Adams was neither a contracting party to the letter agreement of February 1, 1965, nor to the prior contract. Appellant makes no contention that he requested Adams to become a party to the contract or to guarantee the obligations of the Boxing Club. Appellant made no objection to the fact that Adams did not join in the contract. Appellant freely and voluntarily chose to deal exclusively with the corporate entity and, having done so, is estopped to claim that the corporation was the alter ego of the individual and that the individual should be held liable, personally, under a contract which he chose to make with the corporation only. Blond Lighting Fixture Supply Co. v. Funk, Tex.Civ.App., 392 S.W.2d 586 (no writ); Moore & Moore Drilling Co. v. White, Tex.Civ.App., 345 S.W.2d 550 (Ref., n. r. e.); Pace Corp. v. Jackson, 155 Tex. 179, 284 S.W.2d 340.

The judgment of the trial court is affirmed.