**Mrs. Ruth B. MINCHEN, Appellant,**

v.

**W. F. VAN TREASE, Appellee.**

No. 56.

Court of Civil Appeals of Texas.

Houston (14th Dist.).

Feb. 14, 1968.

Rehearing Denied March 13, 1968.

Gerald S. Gordon, Strickland, Gordon & Sheinfeld, Houston, for appellant.

Joseph D. Jamail, John Gano, William J. Stradley, Houston, for appellee.

SAM D. JOHNSON, Justice.

This suit was brought by W. F. Van Trease, the appellee, against the Leo Corporation, and also against Mrs. Ruth B. Minchen, the appellant. The action against Mrs. Minchen sought to attach personal liability to her, claiming the Leo Corporation to be her "alter ego." The action was based on two promissory notes of the corporation, was for damages for breach of contract, and also for the value of certain improvements allegedly made on the corporation's property by the appellee.

After the evidence had been presented the jury was discharged upon joint motion of both parties and judgment for the plaintiff was entered by the trial court on one of the corporate notes in question. Findings of fact and conclusions of law were requested and made by the trial court, to which no objection or exception was made. We therefore look to the pertinent facts contained in the record indulging every legitimate conclusion favorable to the appellee. Nathan v. Hudson, Tex.Civ.App., 376 S.W.2d 856, writ ref., n.r.e.; Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194. The salient facts are set forth.

The appellant, Mrs. Minchen, owned a ten-acre tract of land having an approximate value of $50,000.00 that she wished to sell. She met one J. M. Callahan, a builder and developer, the outcome of which meeting was that she platted and dedicated the ten acres with the intention of selling it to a corporation to be created by Callahan. The idea of a conveyance to a corporation was initiated by Minchen's accountants, in order that she might obtain a capital gain tax advantage. Dallas attorneys were contacted by Callahan and they, for Callahan, incorporated the Leo Corporation. The ten acres were sold by Minchen to the corporation for $50,000.00, she retained a vendor's lien note in such amount secured by a deed of trust. In addition, Minchen loaned Callahan $1,000.00 which he placed in the corporation and for which stock was issued to Callahan. This loan to Callahan was secured by an assignment of the stock of the Leo Corporation to Minchen. Callahan was named president and Minchen was named secretary of the corporation. Both were directors. As president of the Leo Corporation, Callahan initiated its work in developing its only property, the ten acres, for the building of residential homes. The appellant subordinated her vendor's lien on the property and the corporation executed a note and deed of trust for street and utility improvements.

Van Trease, the appellee, was originally introduced to Callahan by Minchen and

subsequently was employed by Callahan to superintend construction for the Leo Corporation. His duties were varied but some included personally assisting Callahan. Van Trease looked to Callahan as president of the corporation for which he worked and understood that he worked for the Leo Corporation.

Money, amounting to some nine or ten thousand dollars, was put into the corporation by Minchen. In addition, she advanced additional sums of money to Callahan, some of which were used for corporate purposes. The corporation borrowed other money for house construction from a local bank, which required Minchen to endorse the corporation's note and to subordinate her vendor's lien. It was under these circumstances that the Leo Corporation began operations with Callahan as president, the appellee, Van Trease, an employee superintending construction of the houses, and the appellant, Minchen, the secretary and a director of the corporation.

After a period of months of work the corporation ceased to operate and Callahan abandoned the project. None of the seven houses that had been started had been completed. The cessation of operations came because the only persons that had theretofore placed money in the corporation, the appellant Minchen and Callahan, stopped so doing.

After the corporation ceased to operate Minchen foreclosed her pledge on the stock of the corporation securing her $1,000.00 note from Callahan and took possession of the corporate stock and records. The $50,-000.00 vendor's lien note being in default, Minchen also foreclosed under the deed of trust securing the note and purchased the properties, including the remaining lots in the subdivision and uncompleted houses.

During the period of the corporation's existence and activity it gave to the employee, Van Trease, by its president Callahan, the promissory note that was the basis of the trial court's judgment. The trial court concluded that the Leo Corporation was the alter ego of Mrs. Minchen and attached personal liability to her on this obligation. During this same period Van Trease, the appellee, contracted to purchase a number of lots from the corporation and in addition, was given a second corporate note. The trial court found insufficient consideration to support either the contract to purchase or the second note and denied the relief sought by the appellee, Van Trease, on them. In both of these instances, Van Trease's dealings continued to be through the Leo Corporation's president, Callahan, and with the Leo Corporation.

The trial court's findings of fact determined that the Leo Corporation was so influenced, dominated and controlled by the defendant, Mrs. Minchen, and that there was such a unity of interest and ownership of such corporation by Mrs. Minchen that its individuality, or separateness, did not exist, and that it was merely an instrument exercising her will, performing her business, and acting as her alter ego. In its conclusions of law the trial court determined that the "legal fiction of separate entities of the defendants, Leo Corporation and Mrs. Ruth B. Minchen, should be disregarded, all and singular, to prevent fraud, to prevent violation of public policy against the organization and use of the corporation as a mere tool of Mrs. Ruth B. Minchen, to prevent the use of the corporate fiction in order to avoid existing legal obligations between the defendants and the plaintiff and to protect the legal rights of the plaintiffs."

While Texas courts may be somewhat more lenient than those of other jurisdictions in disregarding the corporate entity, the reasons for so doing have been well enumerated. These are when the corporation is used to perpetrate a fraud, to evade an existing legal obligation, to achieve or perpetrate a monopoly, to protect a crime, to justify a wrong, to circumvent a statute, and when one corporation exists as a mere tool or business conduit of another corporation. Houston-American Life Ins. Co. v. Tate, Tex.Civ.App., 358 S.W.2d 645, no

writ hist. Unless there are compelling reasons for disregard of the corporate entity, it will be upheld. Pace Corp. v. Jackson, 155 Tex. 179, 284 S.W.2d 340. The mere fact that one person owns the stock is not in itself a sufficient basis for disregard. Commonwealth of Massachusetts v. Davis, 140 Tex. 398, 168 S.W.2d 216.

■ Here the appellant, Minchen, was neither an incorporator nor a stockholder of the corporation. The corporation was incorporated during the period of negotiation by Callahan with Minchen for the purchase of the property. No original scheme or contemplation on the part of Minchen appears in the creation of the corporation, indeed, she did not participate in it and had no more then knowledge that it was being accomplished. There was no initial purpose on the part of the appellant, Minchen, in incorporation that could justify setting aside the corporate structure.

After it was created by incorporation, the Leo Corporation was effectively operated by Callahan, its president, Callahan not only employed the appellee, Van Trease, to work *for the corporation,* but also was recognized as president of the Leo Corporation by Van Trease. It was during this period of corporate activity that the note of the corporation was given to the employee, Van Trease. The record contains no evidence of any prior obligation of the appellee, Minchen, to Van Trease, and, other than knowledge of this note, no design, scheme or plan on her part occasioning its issuance.

In view of his rather extensive dealings with its president Callahan and the Leo Corporation itself, it is clear that the appellee, Van Trease, fully knew and understood that he was dealing with *a* corporation, certainly not the appellant Minchen. He negotiated with the corporation through its president, Callahan, he received conveyances from the corporation signed by Callahan as president, and he was paid by the corporation. At all material times the appellee knew the appellant Minchen and had some knowledge of her relationship to the Leo Corporation. Appellee, Van Trease, chose to deal with the corporate entity and, having done so, is precluded to claim that the corporation is the alter ego of the individual. Blond Lighting Fixture Supply Co. v. Funk, Tex.Civ.App., 392 S.W.2d 586 (no writ); Moore & Moore Drilling Co. v. White, Tex.Civ.App., 345 S.W.2d 550 (ref., n.r.e.); Pace Corp. v. Jackson, supra.

In the absence of any other authority, Atomic Fuel Extraction Corp. v. Slick's Estate, Tex.Civ.App., 386 S.W.2d 180, writ ref., n.r.e., (per curiam Tex., 403 S.W.2d 784), would be determinative of the present case, as its facts substantially exceed those here. There two corporations were designed and organized for a specific purpose by a single shareholder, Slick, who owned the assets for which the corporations contracted. Slick conducted extensive negotiations for the corporations, there was a serious under-capitalization, and each corporation wholly depended on Slick for operating funds. Slick referred to the corporations as "our company" and a business venture "I have." The opinion that, "* * * The court properly instructed a verdict for defendant Slick. Atomic was never confused about the parties with whom it contracted. When it made its contracts with Transworld and Nuclear, it then knew about Slick, his position with respect to the two corporations, and that he was not a promisor. * * * It knew Slick was an officer of and wholly owned both corporations, and that they depended upon him for their operating expenses. * * * No questions were raised and nobody asked Slick to bind himself personally. Atomic, with full knowledge, chose to deal with and continued to deal with the corporations to the exclusion of Slick. It was fully aware of the risk. * * *" Quoting with approval from Hanson v. Bradley, 298 Mass. 371, 10 N.E.2d 259, the court concludes, "He knew the essential facts and accepted the situation."

In the case at bar, the appellee undoubtedly knew the essential facts and likewise

accepted the situation. For this reason and the others stated, the judgment of the trial court must be reversed and rendered for the appellant.