726

**TEXAS ELECTRIC SERVICE CO. v. MOXLEY.**

No. 14297.

Court of Civil Appeals of Texas.
Fort Worth.

Nov. 14, 1941.

Rehearing Denied Jan. 9, 1942.

Bullington, Humphrey & Humphrey and Frank Ikard, all of Wichita Falls, for appellant.

Spence & Kuntz and J. E. Rexford, all of Wichita Falls, for appellee.

BROWN, Justice.

Appellee, Moxley, is a grocer with his place of business in Wichita Falls, Texas, and appellant serves said City with electricity. It installed an electric meter in appellee's store and contracted to serve him with its electric current under the usual and customary terms that all other patrons were so served.

On or about May 9th, 1939, one of appellant's meter readers discovered that the meter in Moxley's store had had both the outer and inner seals, placed thereon by appellant to completely seal the device, broken

and the meter tampered with so that its calibration, whereby the speed and action of the meter is controlled, or governed, had been changed.

This same state of affairs was found to exist on or about December 26th, 1939, and on or about February 21st, 1940.

After discovering the meter seals thus broken for the third time, and the calibration changed, the appellant requested Moxley to come to its office and discuss the matter with the chief clerk, but Moxley declined the invitation, and after about three days had passed, an employee of appellant advised Moxley that if he did not come to the appellant's place of business to discuss the matter of the meters having been tampered with, by the following Saturday, the company would be forced to discontinue the service to him. The employee who testified to this conversation said Moxley replied, "Go ahead and cut it off", or words to that effect. Moxley never denied so saying.

On Monday, February 26th, 1940, appellant discontinued its service to Moxley.

When the current was cut off Moxley sent his wife down to appellant's office to inquire into the matter. She was told about the meters being tampered with and advised that the service would not be continued unless Moxley paid what was estimated to be the value of the current used by him and not paid for—the amount being $45.

Moxley consulted his attorney and after certain telephone conversations between the attorney and the company's chief clerk, the amount was cut down to $40.

Then Moxley and his attorney wrote a letter to the company, "Attention Mr. Butler", who is the chief clerk, in which the $40 was enclosed, and the company was told that Moxley denied any knowledge of the meters being tampered with, and denied that he owed for any current used and not paid for, advised that he had perishable meats in his electric ice box that would spoil, and advised that the $40 was paid under protest and in order to get the current turned on again.

This letter demanded that the current be turned on at once and advised the company that if it persisted in its demand for the $40, it would be sued for damages. Moxley then brought suit and seeks to recover the $40 he paid, $50 actual damages occasioned by his fresh meats spoiling, and $2,500 as exemplary damages.

Tried to a jury on special issues, the findings are: (1) That Moxley had not used electric current he had not paid for, (2) that he was not indebted to defendant for current when the service was discontinued, (3) that he was acting on reasonable grounds and in good faith in contending that he had not used current for which he had not paid, (4) that Butler (the company's chief clerk) did not think that Moxley was indebted to the company in some amount when he ordered the service discontinued, (5) that the seals on the electric meters installed at plaintiff's place of business had been broken, (6) that they had been tampered with, (7) that they incorrectly measured the amount of electricity used at the premises as a result of such tampering, (8) that Moxley's acts did not cause the meters to fail to register the correct amount of current used, (9) that Butler did not act arbitrarily in ordering the service discontinued, (10) that Butler acted with malice in ordering the service discontinued, (11) that a part of Moxley's meats spoiled as a result of the current being cut off, (12) that the reasonable cash market value of the spoiled meats was $18, (13) assessed $1,350 as exemplary damages under the definition that such damages are assessed "as a punishment for the defendant for the arbitrary or malicious act".

Judgment was rendered for Moxley in the sum of $1,408, which includes the $40 paid and $18 for damage to the meats.

The company appealing has presented several assignments of error.

Only those material to this opinion will be discussed.

The first proposition contends that the verdict for exemplary damages is excessive and indicates passion and prejudice on the part of the jury. We are of opinion that the point is well taken. In the very nature of the damages there can be no exact rule, nor can there be an approximately exact rule for computing such damages. Vol. 13, Texas Jurisprudence, pp. 248–250, par. 138, states the rule that the amount of such damages should be reasonably proportioned to the actual damages sustained.

Such cases as International & G. N. R. Co. v. Tel. & Tel. Co., 69 Tex. 277, 5 S.W. 517, 5 Am.St.Rep. 45, announce the rule.

In the case before us the actual damages found by the jury are $18.

728

In Tynberg v. Cohen, 76 Tex. 409, 13 S. W. 315, 317, the Supreme Court said: "A power such as may be exercised by juries in awarding exemplary damages is liable to great abuse,—may often lead to great oppression; and there is no class of cases in which the conservatism of the judge should more frequently find field for action."

■ We are of opinion that we cannot consider the $40, paid for used current, as actual damages. In the first place, the plaintiff alleged that the defendant demanded $45 but "that the defendant later agreed to accept $40 instead of the $45 for the continuation of said service of electric current; that the plaintiff failed to pay the $40 demanded by the defendant and the defendant cut off his electric current".

In our opinion the plaintiff's pleading discloses an agreement to settle the controversy as to the amount due, and we doubt the right of plaintiff to recover such sum.

To say the least, it was not a part of the damages sought to be recovered because the current was cut off.

Such cases as Willis & Bro. v. McNeill, 57 Tex. 465, and International & G. N. R. Co. v. Tel. & Tel. Co., 69 Tex. 277, 5 S.W. 517, 5 Am.St.Rep. 45, sustain our view in respect to the excessiveness of the verdict.

Furthermore, the testimony attempting to prove the amount of damages bottomed on the reasonable cash market value of the meat that spoiled is insufficient to support the issue submitted and the finding made thereon by the jury.

Error is assigned to overruling the objections made to this issue touching actual damages, because of the want of evidence to support it, as well as to the finding made by the jury under such state of facts.

These two contentions are well taken.

■ We see no merit in the contentions that the trial court erred in not submitting the question of whether or not Butler was a vice-principal of the corporation, or that the acts of Butler were neither authorized nor subsequently ratified, and that the trial court erred in submitting the case to the jury on a theory assuming such facts as existing, or that there was error in not submitting the issue of whether or not Butler's acts were authorized or subsequently ratified.

Butler testified that he acted after taking the matter up with the City Manager of the corporation.

In our opinion the City Manager was the alter ego of the corporation and his order given to the chief clerk was the act of the corporation.

We are of opinion that there is a conflict in the answers made to issues Nos. 9 and 10.

To issue 9 the jury answered that Butler did not act arbitrarily in ordering the service discontinued.

■ The trial court defined "arbitrarily" as "an act done without an adequate determining principal and not done according to reason or judgment". In view of another trial, we suggest a clearer and better definition of this important word.

In 3 Words and Phrases, Perm.Ed., 872, we find that " 'arbitrarily' means without fair solid and substantial cause and without reason given, without any reasonable cause in an arbitrary manner".

■ To issue 10 the jury answered that Butler acted with malice, and malice was defined by the trial court: "Malice, in a legal sense, denotes a wrong act done intentionally without just cause or excuse."

If Butler did not act arbitrarily, under the court's definition of such term, he could not have acted with malice, under the charge. This appears to us to be fundamental error on the face of the verdict.

For the reasons given, the judgment is reversed and the cause remanded.