Sam B. HUBBARD et al., Appellants,

v.

CAPITAL SOUTHWEST CORPORATION et al., Appellees.

No. 4839.

Court of Civil Appeals of Texas.

Waco.

Dec. 4, 1969.

James Clement, Irving, for appellants.

Akin, Vial, Hamilton, Koch & Tubb, James Tubb and Geo. Bramblett, Jr., Dallas, for appellees.

## OPINION

WILSON, Justice.

In this stockholders derivative action appellants alleged they own stock and bonds of Great American Realty Corporation. They asserted this corporation became the alter ego of appellee Capital Southwest Corporation because it was not maintained as a separate financial unit, was not adequately financed, the business of the two corporations was not kept separate, Capital owned a majority of the stock of Great American, and defendants Thomas, Singleton and Osborn acted indiscriminately as officers and directors of both.

The petition alleged that Great American was a mere sham corporation, and that Capital had caused it to create an indebtedness to Capital of $482,000. Judgment for this sum in favor of Great American against Capital and the three directors was sought, with other individual relief. Pleadings and depositions constitute the record. The trial court overruled plaintiff's motion for summary judgment, and sustaining that of defendants, decreed that plaintiffs take nothing. We affirm.

This case is controlled by Bell Oil and Gas Co. v. Allied Chemical Corp. (Tex.Sup.1968) 431 S.W.2d 336, in which general rules of decision governing imposition of liability are delineated:

(1) The fact that one corporation "owns all or the majority of the stock of another

corporation does not destroy the identity of the latter as a distinct legal entity".

(2) The fact that the stockholders or officers in the two corporations may be the same persons "does not operate to destroy the legal identity" of either corporation.

(3) The fact that one corporation "exercises a controlling influence over the other" through stock ownership or identity of stockholders does not make one the agent of the other.

(4) The separate legal identities of corporations will not be disregarded because of interlocking directorates or stock ownership "unless such relationship is used to defeat public convenience, justify wrongs, such as violation of the anti-trust laws, protect fraud, or defend crime".

(5) Where the claim on which an attempt to hold the defendant corporation is based is of contractual origin, "additional compelling facts" besides the contract rights must appear.

(6) The arrangement complained of must be one likely to achieve an inequitable result by "a basically unfair device" which has caused or will probably cause prejudice or disadvantage to one dealing with it.

(7) The corporate entity will not be disregarded nor the officers or directors be held liable on the corporate obligations except where the corporate entity is used "as a sham to perpetrate a fraud, to avoid personal liability, avoid the effect of a statute, or in a few other exceptional situations".

Appellants seize on the last quoted phrase, "a few other exceptional situations", and that quoted above: "additional compelling facts", and urge that this is such a case. We do not agree. The history of the operations of these companies evidences a constant effort by Capital and its officers to salvage Great American and its predecessor corporation from insolvency and financial failure; and an attempt to recover something for investors, protect their equity, or recoup their loss. In these attempts and the steps taken to avert financial disaster, appellants, being fully informed, were active. They actively participated, or maintained silence without dissent.

If it be conceded, for purposes of argument, that there was virtual identity between the corporations, appellees state, there is nevertheless no showing in the record of "inequity or disruption of the purpose of the legal entity". We agree. Neither is there any suggestion which we have discovered or been pointed to of fraud, unfairness, concealment, effort to avoid personal liability; or any other malfeasance, misfeasance or nonfeasance which should impose liability on appellees under the governing precepts.

Great American Realty Corporation was originally chartered as "Great American Envelope Company", of which appellant Hubbard was an organizer, along with Capital and another. Hubbard, then president and active executive officer of Great American, testified that a loan from Capital to Great American was "an integral part" of the Corporation's formation. He was also chairman of the board of directors when Capital advanced funds by purchase of 10,000 additional shares of stock, and he continued to be the president and executive officer from 1962 to 1964, purchasing the stock of the third incorporator. In 1964 Hubbard resigned as president of Great American, selling his stock and machinery for cash. The corporation then had an operating loss, he testified of $70,000, and Hubbard had already twice executed agreements subordinating his own $27,500 debenture debt to indebtedness due by Great American to Capital. He had been active in procuring loans from Capital to Great American, and investment of capital in Great American by Capital Southwest Corporation to sustain it as a going concern.

Upon Hubbard's retirement appellant Wade was elected director of Great American and Vice President in charge of sales.

In order to obtain $100,000 additional working capital for Great American, he testified, he executed an agreement whereby Capital would purchase 50,000 shares of Great American common stock and preferred stock on which no dividends were payable "until the company has overcome its earning deficit". Wade himself was granted a stock option. Appellant Inabinette, knowing Great American was operating at a loss also purchased common stock. Other concessions favorable to Great American were made by Capital under terms of the agreement.

Great American failed to prosper and appellant Wade "initiated negotiations" for sale of its assets to another concern. At a meeting of shareholders at which Wade was present it was voted to sell the corporation's assets, and Wade resigned as director and vice president. Great American was out of the envelope business, and had no prospects of any profitable operation.

It was then decided that Great American would engage in a real estate development as a joint venture. Capital agreed to advance Great American $350,000 evidenced by 770 debentures for this purpose, and the corporate name was changed to "Great American Realty Corporation". Hubbard at this time executed another subordination agreement to Capital in consideration of its advancing funds to Great American. The other appellants made no objection to these steps.

Great American, the record shows, has an asset in an industrial tract, development of which is progressing. The joint venturer has advanced or is committed to advance $200,000. Appellants Wade and Inabinette are now the sole stockholders of Great American, which has paid no principal or interest to Capital since 1964. Industrial district realty now owned by Great American in the joint venture, and purchased with Capital's advancements, is being sold and paid for at the rate of 65¢ per square foot. Sixteen of 28 lots have already been sold, the last five for approximately $50,000.

We have found no evidence of probative value in the record to raise a genuine issue of material fact that appellees have contravened the principles enumerated above so as to subject them to the liability appellants seek to impose. In our opinion the summary judgment was correct.

Affirmed.